

# City of Norwich
Connecticut
Police Department

Case#
Date 12/21/01
Time started 2pm
Time ended 3:20pm

Statement of Kristen Ejchorszt

I, Kristen Ejchorszt date of birth 11/15/81
Of 3 Hazlewood Drive Baltic, CT

Make the following statement, without fear, threat, or promise. I have been advised that any statement(s) made herein which I do not believe to be true and which is intended to mislead a public servant in the performance of his/her official function, is a crime under C.G.S. section 53a-157.

On December 21, 2001, I came to the Norwich Police Department to provide additional information to the complaint I had previously made. The additional information concerns the drinking of beer by some of the officers who were on the sting with me. I had not provided this information at the time I first made the complaint because I didn't think that Mark Lounsbury was involved in the taking of the pictures, and didn't want to get him into trouble.

Originally, part of the plans for the sting, as related to me by Daigle, was that Mark Lounsbury was supposed to go into the store with me, and stay nearby while I attempted to purchase. This was to provide a comfort level until I got the hang of it. We first went to the Easy Market on Yantic Street, and Lounsbury did not go in with me, I think because he knew the guy from arresting him. Daigle said "He'll just go into the next place with you."

After that, we went to the Falls Spirit Shop. Lounsbury parked the van on the road in front of the store near the left front corner. Daigle said to me "He's going in to get beer—do you want anything?" Lounsbury turned around as he was getting out and said "Yeah, do you want anything?" I said no. Mark hopped out of the van and went into the store. I stayed in the van because the microphone came inplugged, and Daigle stayed in the van with me to do so. He said "Turn around and show me your ass," and then he took the transmitter box out of my pocket, plugged the wire back in, and put it back in my jeans pocket. We tried a couple of transmissions, and Daigle was on the Nextel with the guys in the other car, asking them if they heard it.

By affixing my signature to this statement, I acknowledge that I have read it and/or have had it read to me and it is true to the best of my knowledge and belief.

Witness____________________ Signed [redacted]

Personally appeared the signer of the forgoing statement and made oath before me to the truth of the matters contained therein.

I notarized, endorse here T/C [redacted] This 21st day of Dec., 2001



# City of Norwich
## Connecticut
## Police Department

Case#

Date 12/21/01

Time started 2pm
Time ended 3:20pm

Statement of Kristen Ejchorszt

I, Kristen Ejchorszt date of birth 11/15/81
Of 3 Hazlewood Drive Baltic, CT

Make the following statement, without fear, threat, or promise. I have been advised that any statement(s) made herein which I do not believe to be true and which is intended to mislead a public servant in the performance of his/her official function, is a crime under C.G.S. section 53a-157.

Once the guys in the other car said that they could hear me, I was about to go into the store, and Lounsbury came back into the van carrying a brown paper bag. I don't think he said anything. I went into the store, went through the routine, and came back into the van. As we pulled away from the curb, Daigle reached into the bag, and took out a six-pack, putting it down next to the brown paper bag. He took one bottle out, and offered me one by saying "Do you want one?" I said no, and he said "Are you sure?" I said yes. Daigle then offered a bottle to Loundbury, who took it.

By the time we got to the Universal Package Store, Daigle had drunk the entire bottle. Lounsbury had drunk about half of his bottle during that time. At the Universal Package store, we parked around to the side. I went in and did the buy routine, came back out, and got back into the van. Daigle had another bottle of beer open. We then went to the Wine Rack on Route 32. From the conversations I heard, the guys in the other car were going to drop off Dolan at police headquarters for a carjacking case. During the ride to the Wine Rack from Universal, Daigle and Lounsbury were talking about Daigle's Porsch and Mercedes, and about how he was thinking about selling the Porsch. Daigle asked me if I wanted to buy it, and I told him no, but I would take it if he gave it to me. Daigle then said that he would give it to me once I started dating old, fat cops.

By the time we arrived at the Wine Rack, Lounsbury had finished drinking his beer. When we got to the Wine Rack, we parked in front, towards the car dealership side. I went in and did the buy routine again.

By affixing my signature to this statement, I acknowledge that I have read it and/or have had it read to me and it is true to the best of my knowledge and belief.

Witness________________ Signed [redacted]

Personally appeared the signer of the forgoing statement and made oath before me to the truth of the matters contained therein.

I notarized, endorse here D/C [redacted] This 21st day of Dec, 2001




# City of Norwich
Connecticut
Police Department

Case#
Date 12/21/01
Time started 2pm
Time ended 3:20pm

Statement of Kristen Ejchorszt

I, Kristen Ejchorszt date of birth 11/15/81
Of 3 Hazlewood Drive Baltic, CT
Make the following statement, without fear, threat, or promise. I have been advised that any statement(s) made herein which I do not believe to be true and which is intended to mislead a public servant in the performance of his/her official function, is a crime under C.G.S. section 53a-157.

After I reentered the van, there was some conversation by Daigle on his Nextel about meeting the guys in the other car at the car dealership next door. We came into the dealership, and there was some car there, apparently looking at the cars for sale. Daigle said over his Nextel that they would have to wait until they left. After the car left, we pulled up alongside the Crown Vic, driver's side to driver's side. Daigle took a beer out of the bag, passed it to Lounsbury, and Lounsbury passed it to the older guy driving the Crown Vic. The older guy didn't say anything. Then Daigle asked the other guy in the Crown Vic if he wanted one, and he said no.

By affixing my signature to this statement, I acknowledge that I have read it and/or have had it read to me and it is true to the best of my knowledge and belief.

Witness______________________ Signed [redacted]

Personally appeared the signer of the forgoing statement and made oath before me to the truth of the matters contained therein.

I notarized, endorse here D/C [redacted] This 21st day of Dec, 2001



# City of Norwich
## Connecticut
## Police Department

Case#
Date 12/21/01
Time started 2pm
Time ended 3:20pm

Statement of Kristen Ejchorszt

I, Kristen Ejchorszt date of birth 11/15/81
Of 3 Hazlewood Drive Baltic, CT

Make the following statement, without fear, threat, or promise. I have been advised that any statement(s) made herein which I do not believe to be true and which is intended to mislead a public servant in the performance of his/her official function, is a crime under C.G.S. section 53a-157.

After that, we went around back of the dealership, onto the side road, and to the next stop, which was right in the center of town on Main Street. During that time Daigle was still drinking a beer. After that store, we headed to Taftville.

During the time I was with him, I saw Daigle open and drink three bottles of beer. Lounsbury drank one. There was one point when Daigle asked me if I liked beer. I told him no, if I liked anything, it would be a mixed drink because it didn't taste like alcohol. I think that was when we left Falls Spirit Shop.

During the initial preparation for the operation, Daigle had me accompany him into the conference room to install the transmitter. He had asked me to take of my shirt, which I did, and he then explained to me where the wires were going to go—one was going to go up my back and the other was going to be clipped to my bra strap. He dropped the wires, went around behind me, and unclipped my bra, which fastens from behind. He hesitated before he came back around in front of me, taking hold of the side straps of my bra and sliding it off. After fastening a wire to my back, he held my bra out for me to put my arms through, which I did, and he went around behind me and fastened it. Then he was trying to tape the microphone to the left strap, and slipped his fingers down into the cup. He did it in a non-chalant manner.

After the operation was done, we went back into the conference room, where Daigle took photos again in reverse order. The wire had come undone and he tucked it up under my bra for the first photo. I took my bra off, and Daigle would say "This is going to hurt," and pull the tape off, and then rub my back where the tape had been. There was no contact with my breast on this occasion.

By affixing my signature to this statement, I acknowledge that I have read it and/or have had it read to me and it is true to the best of my knowledge and belief.

Witness____________________ Signed [redacted]

Personally appeared the signer of the forgoing statement and made oath before me to the truth of the matters contained therein.

I notarized, endorse here D/C [redacted] This 21st day of Dec, 2001