<u>NORWICH POLICE DEPARTMENT</u>

<u>OPERATIONS ORDER</u>

Title: <u>PRISONERS - SEARCHING, RESTRAINING, AND</u>   Order # <u>OP-4</u>

<u>TRANSPORTING PROCEDURES</u>   ___ New   Page <u>1</u> of <u>17</u>

Effective Date: <u>12/13/90</u>

_X_ Replaces Order # <u>OP-4, OP-39</u>

___ Amends Order # _____

Distribution: <u>All Sworn Personnel</u>

I. <u>PURPOSE:</u>

   The issues addressed in this Operations Order are designed to serve two basic purposes:

   A. Protect the basic human dignity and legal rights of all persons coming under the custody and control of the department and ensure that such persons are treated fairly and humanely without favor or discrimination based on race, sex, religion, national origin, social or economic position.

   B. Minimize the chance of escape or the destruction of evidence while maximizing the department's ability to protect the health, safety, and well-being of the public, prisoners, and department employees.

II. <u>SEARCHING PRISONERS:</u>

   A. <u>GENERAL:</u>

      One can never assume that someone else has searched a prisoner. It is the responsibility of each officer to ensure that the prisoner he is transporting, processing, incarcerating, etc. is searched prior to the commencement of such activity.

   B. <u>TRANSPORTING:</u>

      Prior to any prisoner being transported in a police cruiser for any reasons, i.e., to court, to be processed, to a medical facility, to another agency, said prisoner shall be searched by the transporting officer(s).

      (1) <u>EXCEPTION:</u>

         When the danger to the officer, prisoner, or public is greater as a result of the search than it would be with the immediate removal of the prisoner from the area.

Operations Order OP-4 Continued Page 2

    C. <u>INCARCERATION</u>:

        Prior to any prisoner being incarcerated within the Police Facility, the incarcerating officer(s) shall conduct a careful search of the prisoner and remove all evidence, contraband, property unlawfully possessed or which may become evidence, and any property that could be used to inflict injury to self or others, or which may be used to deface property or aid in escape. In all cases, belts, jewelry, shoelaces, matches, cigarette lighters, ties, and other such potentially hazardous materials shall be removed and properly inventoried and secured according to department procedures.

      (1) <u>MD-500 SONIFRISKER</u>:

          (a) The Department has purchased a MD-500 Sonifrisker. Said unit is located in the Booking Area along with operational instructions.

          (b) All persons who cannot be strip searched shall be checked with the Sonifrisker prior to being placed into a cell.

          (c) Should the Sonifrisker activate, the person will be asked to remove the activating item(s). In the event that the person refuses to remove such item(s), such refusal shall constitute a reasonable belief that items are weapons, contraband or controlled substance.

    D. <u>VISITATION</u>:

        In the event that the prisoner is allowed to have a visitor, the prisoner shall be searched prior to being placed back into the cell block.

    E. <u>SEXUAL CONSIDERATION</u>:

        As a general rule, prisoners should be searched by someone of the same sex as the prisoner. Only under exigent circumstances, such as the immediate destruction of evidence or the likelihood of injury to the prisoner, public or officer, is a search of a prisoner by an officer of the opposite sex permissible. In such cases, the searching officer shall use the modified "back of hands" technique for the search and shall minimize physical touching.

      (1) <u>DOCUMENTATION</u>:

          In the event that an officer feels that it is necessary to search a member of the opposite sex, said search shall be documented in the arrest report or as a supplement to said report, including the justification for the search.

Operations Order   OP-4   Continued   Page 3

F. STRIP AND BODY CAVITY SEARCHES:

(1) DEFINITION - "STRIP SEARCH":

"Means having an arrested person remove or arrange some or all of his or her clothing or, if an arrested person refuses to remove or arrange his or her clothing, having a peace officer or employee of the police department remove or arrange the clothing of the arrested person so as to permit a visual inspection of the genitals, buttocks, anus, female breasts or undergarments used to cloth said anatomical parts of the body."

(2) PROCEDURES:

(a) STRIP SEARCHES

- FELONY ARRESTS

a. Any officer wishing to conduct a strip search of a person arrested for a felony shall adhere to subsection (b. through g.) of MISDEMEANOR AND MOTOR VEHICLE OFFENSES below.

- MISDEMEANOR AND MOTOR VEHICLE OFFENSES

a. No person arrested for a motor vehicle violation or a misdemeanor offense, shall be strip searched unless there is a reasonable belief that the individual is concealing a WEAPON, A CONTROLLED SUBSTANCE, OR CONTRABAND.

b. No employee of the Department may conduct a strip search until such employee has obtained written permission from one of the following:

- The Chief of Police

- The Deputy Chief of Police

- A Division Commander

- A Shift Supervisor

c. No employee shall conduct a strip search until such employee has completed a Strip Search Report (Norwich Police Department Form #80).

d. A copy of the Strip Search Report shall be given to the person subjected to the strip search.

e. All strip searches shall be performed by a person of the same sex as the person being searched.

Operations Order  OP-4  Continued  Page 4

  f. The search will be conducted in an area where said search cannot be observed by anyone not physically conducting the search or not absolutely necessary to conduct the search.

  g. No more persons shall be involved in the search than is necessary to ensure the safety of the person being searched and the persons conducting the search.

(b) BODY CAVITY SEARCHES

  a. No employee of the Department shall conduct a search of any body cavity other than the mouth, without a search warrant.

  b. The mouth is not a body cavity relative to this law and therefore is not covered by it.

  c. Said search warrant, in addition to establishing the normal probable cause requirement, shall specify the following:

   - That the search will be performed under sanitary conditions and conducted either by or under the supervision of a person licensed to practice medicine in accordance with Chapter 370 of the Connecticut General Statutes.

  d. If the body cavity search is conducted by someone other than a licensed physician, said search shall be performed by a person of the same sex as the person being searched.

  e. The body cavity search shall be conducted in an area where said search cannot be observed by anyone not physically conducting the search or not absolutely necessary to conduct the search.

  f. No more persons shall be involved in the search than is necessary to ensure the safety of the person being searched and the persons conducting the search, and shall be of the same sex as the person being searched.

  g. A copy of the search warrant shall be given to the person searched in accordance with Section 53-33c of the Connecticut General Statutes unless such service can be dispensed with according to said statute.

III. PRISONER RESTRAINT:

 A. HANDCUFFS:

  Only double-locking handcuffs approved by the department will be used.

Operations Order  OP-4  Continued  Page 5

    (1) A prisoner, while in custody, being brought to or from a police facility or being transported in a vehicle shall be handcuffed with his hands in the rear unless otherwise directed by a supervisor.

    (2) When applied, handcuffs will be secured in such a manner as not to cause pain or discomfort to the prisoner. Cuffs should be tightened so that the prisoner's hands cannot slip free, but not so tight that circulation is impeded.

    (3) Prisoners should be handcuffed with the palms facing outward, making it more difficult to manipulate the cuffs with the fingers.

    (4) Handcuffs shall be placed on in the double-locked position to prevent slipping of the ratchet and tightening of the cuffs.

    (5) Prisoners shall not be handcuffed to the fixed part of any automobile, boat or aircraft, while being transported.

    (6) If a prisoner is injured, physically handicapped, or obese, thereby creating a possibility of injury or the exacerbation of a present injury, handcuffs shall not be applied, or may be applied with the person's arms in front of his body. In such cases, a restraining belt shall be used or the prisoners belt shall be turned around and buckled in the rear and the handcuffs passed through the belt when applied.

    (7) If circumstances are such that the public, the prisoner, or the officers would be placed in greater danger as a result of following the above procedures than by pursuing a different course of action, the specific action taken and the justification for it shall be so noted in the arrest report or any applicable supplement.

    (8) Whenever there is injury as a result of the application of handcuffs, or a complaint of injury, such injury or complaint of injury shall be noted in the report and photographs taken. Photographs shall be taken even if there is no outward sign of injury.

    (9) Whenever there is injury or the complaint of injury as a result of handcuffs being applied, and the prisoner is within our custody and will not be released in the immediate future, said prisoner will be transported to the W.W. Backus Hospital for treatment.

B.  LEG IRONS:

    (1) There are two pair of leg irons located in the Booking Room at Police Headquarters.

    (2) Leg irons are to be used in cases of combative or high-risk escape prisoners.

    (3) Handcuffs are not to be used in lieu of leg irons.

Operations Order   OP-4   Continued   Page 6

    (4) All applicable regulations relative to handcuffs are also applicable to leg irons.

  C. FLEXCUFFS:

    (1) Flexcuffs are located in the armory and are to be used in cases where mass arrests are expected and the supply of handcuffs are exhausted.

    (2) All applicable regulations relative to handcuffs are also applicable to flexcuffs.

  D. WAIST BELTS:

    (1) There are two (2) waist belts located in the Booking Room at Headquarters and are to be used in the following situations:

      (a) Whenever a prisoner is transported from Headquarters to any other location.

      (b) Whenever a prisoner is picked up from another agency and transported to Headquarters or another location.

IV. PRISONER TRANSPORT:

  A. MARKED CRUISER PREFERRED:

Whenever possible, marked cruisers shall be used for prisoner transport, as all marked cruisers are equipped with security screens, the door handles in the rear have been removed, and the rear window handles have been removed or, in the case of electronic windows, have been disconnected.

  B. VEHICLE INSPECTION:

    (1) Prior to transporting a prisoner, the transporting officer shall search the vehicle to ensure that there are no weapons, contraband, etc. within the vehicle. Upon completion of the transport, the vehicle shall be searched again.

    (2) At the beginning of each tour of duty, the cruiser driver shall inspect his vehicle to ensure that there is no contraband, evidence, or weapons within the vehicle, that the vehicle itself is equipped with required equipment, that the fluid levels are adequate, that the vehicle is operating properly and the tires are inflated properly and have sufficient tread. In the event that a transport is to be conducted outside of the city, the transporting officer shall ensure that the vehicle contains a spare tire and lug wrench. If it is expected that gas will have to be procured, the transporting officer will bring sufficient money and will obtain receipts for anything purchased.

Operations Order OP-4 Continued  Page 7

### C. OFFICER SEATING:

(1) TWO OFFICERS PRESENT:

It is preferred that there be two officers present during prisoner transport. The second officer shall always sit in the rear seat directly behind the operator.

(2) ONE OFFICER PRESENT:

(a) MARKED CRUISER - The prisoner shall be placed in the rear seat.

(b) UNMARKED CRUISER - The prisoner shall be placed in the front seat and secured in place with the seat belt.

### D. SEXUAL CONSIDERATIONS:

(1) Whenever possible, prisoners should always be transported by an officer of the same sex as the prisoner.

(2) Whenever there are two officers of the opposite sex, the officer that is the same sex as the prisoner shall ride in the rear seat with the prisoner.

(3) Whenever an officer transports a prisoner of the opposite sex, the following procedures shall be complied with:

(a) The officer shall give the starting point, time, and odometer reading at the beginning of the transport.

(b) The officer shall give the ending point, time, and odometer reading at the end of the transport.

(c) The Dispatcher shall log said information on the daily "Radio Log/Complaint Form".

(d) In the event that there are two officers in separate cruisers, the second officer shall follow the transporting vehicle keeping same in sight at all times.

### E. TRANSPORTING MORE THAN ONE PRISONER:

(1) No more than two prisoners shall be transported in a cruiser at the same time.

(2) Prisoners that are a danger to each other or have been involved in a controversy or fight with each other shall not be transported in the same cruiser.

Operations Order  OP-4  Continued  Page 8

    (3) Discretion should be used when transporting prisoners that have committed a crime together when they may have to be interviewed relative to that crime at the end of the transport.

    (4) Prisoners of the opposite sex should not be transported in the same cruiser unless they are co-defendants and (3) above has been taken into consideration.

F. RESPONDING TO CALLS FOR SERVICE OR EMERGENCIES WHILE TRANSPORTING:

    (1) Officers transporting prisoners shall not respond to citizen calls for service unless there is a risk of death or injury to a third party and they have obtained permission from a supervisor.

    (2) In the event that the transporting officer is given permission to stop and assist, he shall take all steps to ensure that the prisoner is not injured, endangered, or allowed to escape. The Dispatcher shall immediately send additional backup units. Upon arrival of the first backup unit, the transporting officer shall advise him of the situation and if not absolutely needed shall resume the transport, giving his mileage, starting point and time.

    (3) If the transporting officer encounters a non-emergency need for law enforcement service, i.e. accident without injuries, disabled vehicle, etc., he shall advise the Dispatcher of the necessary information. Another officer shall be assigned to investigate the problem, and shall explain to the citizen the reason why the first officer was unable to stop and render assistance.

G. PRISONER COMMUNICATION DURING TRANSPORT:

Prisoners will not be permitted to communicate with anyone other than law enforcement personnel during transport. Nor will family members, friends, or attorneys be allowed to accompany prisoners during transport.

H. MEALS DURING TRANSPORT BY MOTOR-VEHICLE:

    (1) Transportations involving meal stops will always be done with two (2) officers.

    (2) Taking of meals will not be allowed unless the transportation exceeds four (4) hours in duration.

    (3) Restaurants will be chosen at random and not unduly crowded.

    (4) One officer will always remain with the prisoner and if at all possible, the meal should be consumed in the vehicle.

    (5) Although the prisoner's hands may be freed while eating, both officers should remain very alert and the prisoner should be compelled to remain in the seat belt.

Operations Order  OP-4  Continued   Page 9

I. <u>LAVORATORY PROCEDURES</u>:

   (1) The officer should make the decision as to the facility to be used.

   (2) The officer should make the decision as to the stall to be used.

   (3) Whenever possible, an unoccupied restroom should be used. If necessary, the public should be prevented from using the restroom while the prisoner is using same.

   (4) If there are two officers, one should inspect the restroom and the stall prior to the prisoner being brought in. Inspection should include the water tank if one is present. If there is only one officer, he should do the inspection prior to removing the handcuffs.

   (5) Handcuffs should be removed just prior to the prisoner entering the stall and reattached immediately upon the prisoner completing washing up. The prisoner is to be kept under visual observation at all times except when actually in the stall, at which time the officer shall remain directly outside of the stall.

J. <u>TRANSPORTATION OF HANDICAPPED OR MEDICALLY/MENTALLY ILL SUBJECTS</u>:

   (1) Handicapped persons and persons who are physically or mentally ill persons present conditions that require special care and attention. special devices, treatment, or medicine may be required. In addition, restraining devices may or may not be appropriate. Transporting officers should consult with a supervisor prior to transporting such persons.

   (2) Efforts should be made to determine if a physician has prescribed any special treatment or conditions that would affect or be affected by transportation.

   (3) Prisoners requiring medical treatment or who are paraplegic or quadriplegic will be transported in an ambulance, wheelchair van or other suitable vehicle staffed with personnel medically qualified to administer whatever care may be necessary.

   (4) Handicapped prisoners should be evaluated for escape possibility and probability prior to the use of restraining devices. Such devices should only be used when the escape possibility and probability is high and a physician has indicated that such use would not injure the prisoner.

   (5) Straight jackets and restraint bags are only to be applied by medical personnel. Officers may assist in restraining a combative prisoner in order that medical personnel may apply said devices.

Operations Order  OP-4  Continued  Page 10

    (6) Whenever a prisoner is injured prior to transportation, he shall be evaluated as to the nature of the injury and if he should be transported in an ambulance or the cruiser.

    (7) Whenever a prisoner is transported in an ambulance, wheelchair van or other such vehicle, a police officer shall accompany the prisoner and remain with him until ordered otherwise by a supervisor. The prisoner should be kept under visual observation at all times. If the attending physician prohibits this, the officer should remain outside of the door of the room the prisoner is being treated in. In the event that there are two doors or windows present, additional officer will be assigned to cover said points.

    (8) Transporting officers shall follow handcuffing procedures applicable to injured persons as outlined in Section III of this order.

K.   PRISONER IDENTIFICATION - PRIOR TO TRANSPORTING:

    (1) Transporting officers shall make every effort to ensure that the prisoner being transported is the correct prisoner. This is especially true when transporting a prisoner from another agency or institution.

    (2) In order to specifically identify a prisoner, the transporting officer shall ask him/her specific questions, such as name, date of birth, current charge, and other identifying data that can be readily checked against known data.

    (3) If possible, a photo should be obtained or a complete physical description including such things as tattoos, scars, etc.

    (4) If possible, the transporting officer should determine how the agency or institution that is surrendering the prisoner made their identification.

    (5) When the transporting officer has a reasonable doubt as to the prisoner's identity, he shall contact his immediate supervisor for additional assistance in making the identification as well as further advice and instructions.

    (6) The transporting officer shall check the arrest log for the cell number and match it against the prisoner property receipt and prisoner's name.

L.   DOCUMENTATION FOR PRISONER TRANSPORTS:

    (1) The following documentation must accompany prisoners being transported to various destinations and transporting officers must follow the specific intake and security procedures in each case.

Operations Order OP-4 Continued Page 11

    (a) TO GA-21 FOR ARRAIGNMENT:

- Daily Transmittal

- Uniform Arrest Report (UAR) or Misdemeanor Summons, or if a No Bail Compact State an Infractions Summons

- Arrest Warrant (if applicable)

- If a warrantless arrest, a copy of the Notarized Arrest Report.

- The prisoners property along with a Prisoner Property form.

- Upon arrival at GA-21, the call button is pressed by the transporting officer.

- The sheriffs will open the sallyport and allow entry.

- The cruiser doors will not be opened until the sallyport door is closed again.

- The transporting officer(s) will remove their weapons and store same in the gun port.

- The prisoner will be brought to the holding area and turned over to a sheriff.

- The sheriff will sign the Prisoner Property Receipt and the prisoner's property will be turned over to the sheriff.

- The transporting officer will remove his cruiser from the sallyport.

    (b) TO THE MONTVILLE CORRECTION CENTER:

- A Writ of Mittimus

- The prisoner's property along with a Prisoner Property Receipt.

- The transporting officer will call the Correctional Center and advise them as to his name, department, prisoner's name, reason for incarceration, and his estimated time of arrival.

- Upon arrival, the gated entry on the left side of the Correctional Center is used for entry.

- The guard will open the gate which is video monitored.

- After entry, the cruiser doors are not opened until the gate is closed.

- The transporting officers shall remove their weapons and place them in the trunk of the vehicle prior to removal of the prisoner from the cruiser.

- Once the Admissions Officer is in the Admissions Area, the officer(s) and prisoner are allowed in.

- The transporting officers provide the Admissions Officer with their names, and a copy of the mittimus. The original mittimus is retained by the transporting officer to accompany his report.

- The prisoner's property is turned over to the Admissions Officer who signed the Prisoner Property Receipt.

(c) NIANTIC CORRECTIONAL CENTER:

- The Writ of Mittimus

- The prisoner's property along with a Prisoner Property Receipt.

- The transporting officer will call the Correctional Center, advise them of his name, the department's name, the prisoner's name, reason for incarceration and his estimated time of arrival.

- Upon arrival, the transporting officers will park their cruiser in front of the Administrative Building.

- The prisoner is escorted into the Administrative Building by the transporting officers, their weapons do not need to be secured.

- The transporting officers will turn over the prisoner to the Admissions Officer, provide the Admissions Officer with their names, a copy of the Mittimus. The original Mittimus is to be retained by the transporting officers to accompany their report.

- The prisoner's property is turned over to the Admissions Officer and the prisoner property receipt is signed.

Operations Order  OP-4  Continued Page 13

    (d) JUVENILE DETENTION CENTER - HARTFORD/NEW HAVEN:

- Juvenile must be charged with a criminal offense.

- Original copy of Juvenile Court Referral completed and notarized.

    NOTE: If a police report cannot be provided due to an ongoing investigation, a signed, sworn and notarized affidavit of the facts may be substituted for the report. This affidavit would be fashioned after an arrest warrant application showing your probable cause for charging said juvenile.

- Contact the Detention Center by telephone prior to transport.

- A Detention Center will not accept, sick, injured or intoxicated juveniles who have not been examined by a physician.

    Hartford Detention is located at 920 Broad Street, Hartford, Ct., 566-8280. Entry is at the rear right door. Ring door bell and someone will accompany all to the processing area.

    New Haven Detention is located at 239 Whaley Avenue, New Haven, Ct., 786-0343. Entry is through a sallyport door on the west side of the building.

- Juvenile Court Referral and/or the report/affidavit has to accompany the juvenile to detention.

(2) The following documentation must be presented and the transporting officers must follow the specific procedures when picking up a prisoner from the following facilities:

    (a) MONTVILLE CORRECTIONAL CENTER:

- A Writ of Habeas Corpus (Note: Writ may already be lodged at facility.)

- The transporting officer will call the Correctional Center, advise them of his name, the department's name, and the fact that they have a Writ of Habeas Corpus for a particular individual and their estimated time of arrival.

- Upon arrival, the gated entry on the left side of the Correctional Center is used for entry.

- The guard will open the gate which is video monitored.

Operations Order OP-4 Continued Page 14

- After entry, the gate will be closed.

- The transporting officers will secure their weapons in the trunk of their cruiser.

- Once the Admissions Officer is in the Admission Area, the officer(s) are allowed entry.

- The transporting officers will provide the Admissions Officer with their names as well as a copy of the Writ of Habeas Corpus. The original Writ of Habeas Corpus will be retained by the transporting officer to accompany his report.

- The prisoner is then turned over to the transporting officer(s) at which time the prisoner is then handcuffed, as per departmental policy.

- Once prisoner is handcuffed, the Admissions Officer will allow entry back to the gated area where the cruiser is parked.

- The transporting officers are to secure the prisoner in their cruiser as per departmental policy.

(b) <u>NIANTIC CORRECTIONAL CENTER:</u>

- A Writ of Habeas Corpus (Note: Writ may already be lodged at facility.)

- The transporting officers will call the Correctional Center, advise them of his name, the department's name, and the fact that they have a Writ of Habeas Corpus for a particular individual and their E.T.A.

- Upon arrival, the transporting officers will park their cruiser in front of the Administrative Building, however, the weapons do not need to be secured.

- The transporting officers will enter the Administrative Building, proceed to the Admissions Office where they will provide a copy of the Writ of Habeas Corpus, and their names. The original Writ of Habeas Corpus is to be retained by the transporting officers to accompany their report.

- Once the prisoner is turned over to the transporting officers, the prisoner is to be handcuffed and secured per departmental policy.

Operations Order  OP-4  Continued  Page 15:

    (3) RENDITION:

       (a) A Governor's warrant (only if the prisoner refuses to waive rendition)

       (b) A certified copy of the case report

       (c) Formal departmental credentials and personal identification

       (d) Before leaving the other state, the transporting officer must have a court order showing that the prisoner has:

          - Been arrested pursuant to the Governor's warrant, or,

          - Has waived his rendition rights.

M. PRISONER ESCAPE - DURING TRANSPORT:

  (1) WITHIN THE CITY OF NORWICH:

      (a) Immediately notify the Dispatcher via radio giving location, prisoner's name, charge, description, direction of travel, mode of travel, any other pertinent information.

      (b) Attempt to recapture the prisoner and continue to do so until relieved by a supervisor.

      (c) The Dispatcher will immediately notify the Shift Commander who will assign necessary personnel in appropriate positions.

      (d) If recaptured, the prisoner will be charged with escape from custody. If the original arrest was on a warrant, take a new case number and refer it to the warrant case number. If the original charge was not on a warrant, simply add the escape charge to the present charges and use the same case number.

      (e) If not recaptured, the transporting officer shall apply for a warrant charging the prisoner with escape from custody. (Note: The same procedure relative to case numbers applies.)

  (2) OUTSIDE THE CITY OF NORWICH:

      (a) Immediately notify the Dispatcher by radio or telephone supplying information as outlined in (1)(a) above.

      (b) Attempt to recapture the prisoner and work in conjunction with law enforcement personnel from that jurisdiction until relieved by a supervisor.

      (c) The Dispatcher will immediately notify the affected law enforcement agency providing pertinent information as outlined in (1)(a) above and the Shift Commander.

Operations Order  OP-4  Continued  Page 16
-----

      (d)   The Shift Commander may assign additional personnel to assist in the recapture effort, if he deems it necessary and practical.

      (e)   The transporting officer will follow the arrest procedures as outlined in (1)(d) and (1)(e) above.

  (3)  Whenever a prisoner escapes during transport, the transporting officer(s) shall file appropriate supplements providing full details of the escape. The appropriate Division Commander shall investigate said escape and file a supervisor's report with his conclusions. Internal Affairs will review the case for appropriate remedial action.

N.   SPECIAL SITUATION TRANSPORTS:

  (1)  There are situations where humanitarian considerations dictate the need for transportation of a prisoner. In cases such as imminent death of a family member, the funeral of a family member, etc., the Chief of Police, Deputy Chief of Police or Captain may authorize prisoner transportation in order to attend such events.

  (2)  An enhanced chance of escape is inherent in such situations. Two officers in civilian clothing will be assigned in an unmarked police vehicle to conduct the transport. Said officers will follow all applicable transportation procedures and pay particular attention to the prisoner to prevent escape or the infliction of injury to himself or others.

V.   TRAINING:

The Training Division shall develop curriculum addressing all aspects of this order and shall conduct appropriate training to ensure that every member of the department is cognizant of and understands the order as it relates to his or her sphere of operations.

VI.  CONFIDENTIALITY OF RECORDS:

A.   In order to safeguard prisoners' Constitutional Rights to privacy, the only information that will be given out concerning prisoners or the arrest record will be that information contained on the "Daily Arrest Blotter". All other requests for information relative to a prisoner or his arrest record will be forwarded to the Records/Service Division Commander who will review same and release information in accordance with Title 54 of the Connecticut General Statutes and Title 28 of the Code of Federal Regulations.

B.   The above procedure in no way affects a Shift Supervisor or Division Commander from preparing Press Releases relative to specific cases as long as said release does not address the concerns raised in subsection "A" above.

Operations Order  OP-4  Continued  Page 16

    C. All such Press Releases must be approved by the Chief of Police or Deputy Chief prior to the release.

                                              Issued By: *Richard J. Abele*
                                                         Chief Richard J. Abele