UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

KRISTEN EJCHORSZT          :      NO.:  302CV1350 (CFD)
                          :
v.                        :
                          :
JAMES F. DAIGLE, JR., ET AL    :      JANUARY 13, 2006

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS, LOUIS J. FUSARO MARK LOUNSBURY, POLICE DEPARTMENT OF THE CITY OF NORWICH and CITY OF NORWICH

**I.      FACTS AND ALLEGATIONS OF COMPLAINT**

The plaintiff, Kristen Ejchorszt, brought this action by way of a twelve count complaint dated July 15, 2002 in Connecticut Superior Court.   These defendants timely removed the case to this Court on August 5, 2002.  Plaintiff alleges that on November 30, 2001, the co-defendant James F. Daigle took two to three nude photographs of her from the waist up during her participation in an underage alcohol sting operation, when the plaintiff was 20 years old.  Complaint, Count One, ¶¶1-9. Daigle also allegedly photographed the plaintiff several times with her brasserie on. Id., ¶9.  Defendants herein are the Chief of Police, Louis J. Fusaro, Officer Mark Lounsbury, the Police Department of the City of Norwich and the City of Norwich.

Counts One through Eight are directed to the co-defendant, James F. Daigle, and allege invasion of privacy, assault and battery, intentional misrepresentation, invasion of privacy by false light, libel per se, libel, negligent infliction of emotional

distress, intentional infliction of emotional distress, and a claim for punitive damages

on the basis that Daigle's actions were intentional, malicious, wanton and willful,

respectively.

Counts Nine, Ten and Eleven are the subject of this motion and include

allegations directed to Chief Fusaro, the City and Officer Mark Lounsbury.  In Count

One, plaintiff alleges that Chief Fusaro is sued in his official capacity only.  Complaint,

First Count, ¶ 4.  Count Nine is a claim for negligent supervision directed to Chief

Fusaro.  Specifically, the plaintiff alleges that Chief Fusaro failed to use due care in

supervising co-defendant Daigle and other officers in the conduct of liquor sting

operations utilizing underage volunteers in that:

> (a)    he failed to promulgate, cause to promulgate, or enforce
>         guidelines for the conduct of underage liquor stings that would
>         protect underage female volunteers, in order to protect their safety
>         and to prevent misconduct by police officers;
> (b)    he failed to take adequate steps to insure that police officers in his
>         department followed state-issued guidelines for the conduct of
>         liquor sting operations;
> (c)    he failed to take adequate steps to prevent Daigle from taking
>         advantage of underage female volunteer operatives, in light of
>         Daigle's history of taking and displaying nude and seminude
>         photographs of young women, including other volunteer female
>         operatives; and
> (d)    he failed adequately to enforce department policies against sexual
>         harassment as to female volunteer operatives.

Count Ten of the complaint seeks indemnification from the City of Norwich,

citing C.G.S. §§7-465 and 52-557n [1], for the actions of all defendants, including

---

[1] As shown below, C.G.S. § 52-557n is not an indemnification statute.

Daigle.   Count Ten contains the first reference to defendant Mark Lounsbury.  Plaintiff alleges that this suit is brought against Lounsbury in his individual and official capacities.  Complaint, Tenth Count, ¶40.  The plaintiff alleges that Lounsbury participated with Daigle in the November 30, 2001 sting operation, and knew or should have known that Daigle was taking partially nude photographs of the plaintiff.  Id., ¶41. The plaintiff further alleges that the defendants had a duty and opportunity to protect her from Daigle's unlawful actions, yet failed to do so.  Id., ¶42.

Finally, Count Eleven is a civil rights claim as to all defendants, brought pursuant to 42 U.S.C. §1983, alleging that the defendants subjected the plaintiff to unreasonable and excessive abuse in violation of her rights to privacy and to be secure in her person from unreasonable intrusion, and her right to equal protection of the laws, as guaranteed by the Fourth and Fourteenth Amendments to the U.S. Constitution. Count Eleven incorporates the allegations of Count Ten, which in turn incorporates the allegations of the Ninth Count, against Chief Fusaro for negligent supervision.  Thus, the plaintiff's §1983 claims against Chief Fusaro, the Police Department, and the City of Norwich are based upon negligent supervision.  As to Lounsbury, the plaintiff claims he participated in the sting operation with Daigle and knew or should have known that Daigle was taking partially nude photographs of the plaintiff, with a police department camera, in violation of police department policies and the plaintiff's privacy rights.  Id., ¶48.

3

The plaintiff first reported this incident to Chief Louis Fusaro and Deputy Chief Warren Mocek on December 3, 2001.  **Exhibit A**, Affidavit of Warren Mocek; **Exhibit B**, Statement of Kristen Ejchorszt dated December 3, 2001.  At that time, plaintiff only complained that photographs had been taken of her.  Later, on December 21, 2003, the plaintiff complained that Officer Daigle and Lounsbury had been drinking beer during the operation.  **Exhibit C**, Statement of Kristen Ejchorszt dated December 21, 2001.  Officer Lounsbury drank one beer.  Id.  Upon plaintiff's complaint, Chief Fusaro immediately directed Deputy Chief Warren Mocek to investigate the matter. **Exhibit A**, ¶ 6; **Exhibit D**, Affidavit of Louis J. Fusaro, ¶ 5.  Following Mocek's six month investigation, Daigle was terminated from the Norwich Police Department.  Id.

Officer Lounsbury did accompany Daigle and the plaintiff on the sting operation. **Exhibit E**, Affidavit of Mark Lounsbury; **Exhibit F**, Statement of Mark Lounsbury dated December 11, 2001.  He made a list of stores they would target.  Id.  He saw the plaintiff sitting at Daigle's desk.  Id.  Daigle then told Lounsbury to get another officer, Al Costa, who would also be accompanying them.  Id.  Lounsbury did so, as he saw Daigle and the plaintiff heading towards the conference room.  Id.  Lounsbury then returned to his desk to complete the list of establishments, printed it out, and made copies.  Id.  He came back into the office and the plaintiff and Daigle were in the Narcotics cubicle.  Id.  He saw they were fumbling with the transmitter.  Id.  Lounsbury checked two disks for the digital camera, which were blank.  Id.  He was putting a third disk in when Daigle said he needed to take her picture again.  Id.  The third disk was

4

also blank.  Id.  Lounsbury then handed Daigle the camera.  Id.  He did not see Daigle

take any pictures, but Daigle later gave him a disk with photos and one of her ID on it.

Id.  (These photos are attached as **Exhibit G**).

The plaintiff testified that when she arrived for the operation it was determined

she would be wired.  She thought the pager wire was not used because it was not

operating.  **Exhibit H**, Deposition of Kristen Ejchorszt, p. 45-46.  Daigle decided to use

the body microphone.  Id.  Identification photographs were also taken.  Daigle then

took the plaintiff into a conference room at the end of the hallway of the police

department.  Id, p. 47-49.  Only Daigle and she were present.  Id.  He told the plaintiff

to remove her shirt and he removed her bra to put the wire on.  Id, at 47-49, 54.

Daigle left a couple of times during this.  Id.  The plaintiff believes he took several

pictures of her, although the plaintiff never saw any pictures; has no knowledge that

Daigle kept any photographs or showed nude photographs of her to others; did not

discuss the photographs with anyone; and Daigle made a comment that the camera

was not working.  Id., at p. 59-60, 62, 113, 128.  She does not know if Lounsbury was

around initially or around when Daigle said he was going to take her picture in the

conference room.  Id., at p. 120-122.

Lounsbury never saw any nude or semi-nude pictures of the plaintiff.  **Exhibit E**

and **Exhibit F**.  The plaintiff never told Lounsbury about the pictures.  **Exhibit H**,

p. 128.  The plaintiff cannot say that Lounsbury did see any pictures of her, or that any

pictures were actually taken.  Id., at  pp. 126-127.  She can only say was looking at the

camera.  Id. In sum, she has no evidence Lounsbury knew about the pictures.  Id., at p. 131-133.

The plaintiff has no information that Chief Fusaro knew Daigle had taken nude photographs of female operatives.  Id., at 143-145.  No supervisory officer had such notice.  Id., p. 145-146.  All she can say is that she believes Daigle showed consensual photographs of nude women to other officers.  Id., at p. 143-145.

The defendants now move for summary judgment of Counts Nine, Ten and Eleven.  As to the federal claims in Count Eleven, plaintiff's allegations of negligence do not support §1983 liability.  Lounsbury also moves for summary judgment on the basis of qualified immunity.  The common law negligent supervision claim against Fusaro is barred by governmental immunity at common law and pursuant to C.G.S. § 52-557n.  Likewise, the indemnification claim in Count Ten must fail.  Plaintiff's claim for indemnification as to Daigle in Count Ten fails as a matter of law because a municipality is not liable for the intentional conduct of its employee.  Any indemnification claim against Lounsbury in this Count fails because the plaintiff did not plead a separate count of negligence against him.

## II.    LAW AND ARGUMENT

### A.    Summary Judgment Standard.

Federal Rule of Civil Procedure 56(c) requires the entry of summary judgment ". . if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."  A

factual dispute is "genuine" when the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 247-248, 106 S.Ct. 2505, 2510, 91 Ed.2d 202 (1986).  A "material fact" is one

whose resolution will affect the ultimate determination of the case.  Id.  In determining

whether a material issue of fact exists, the court must resolve all ambiguities and draw

all inferences against the moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S.

at 255, 106 S.Ct. at 2513; J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524,

1531 (3d Cir. 1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246

(1991).  However, "the mere existence of some alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment;

the requirement is that there be no genuine issue of material fact."  Samuels v. Smith,

839 F.Supp. 959, 962 (D.Conn. 1993).

The party opposing summary judgment "may not rest upon the mere allegations

or denials of his pleading, but . . . must set forth specific facts showing that there is a

genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256, 106 S.Ct. at

2510; see also, Knight v. United States Fire Insurance Co., 804 F.2d 9, 12 (2d Cir.

1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 763 (1987); Quinn v.

Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).  Thus, once

the moving party has satisfied its burden of identifying evidence which demonstrates

the absence of a genuine issue of material fact, the non-moving party is required to go

beyond the pleadings by way of affidavits, depositions, and answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 265 (1986).  "Neither courts nor defendants should be subjected to trials which can be little more than harassment."  Applegate v. Top Associates, Inc., 425 F.2d 92, 96 (2d Cir. 1970).

When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to the case, which it bears the burden of proving at trial.  Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987).  Where evidence is submitted in support of, or in opposition to, a motion for summary judgment, such evidence must be presented in a manner consistent with its admissibility at trial.  See First National Bank of Clinton, Ill. v. Insurance Co. of North America, 606 F.2d 760 (7th Cir. 1979)(in ruling on summary judgment motion, the District Court properly relied on documents and exhibits identified by affidavit).  Unsworn statements of the parties, letters addressed to litigants from third persons, and hearsay, which does not fall under one or more of the exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not properly be considered.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Beyene v. Coleman Security Services, Inc., 854 F.2d 1179 (9th Cir. 1988); Edward B. Marks Music Corp. v. Stasny Music Corp., 1 F.R.D. 720 (S.D.N.Y. 1941).

8

### B.    Qualified Immunity Generally.

Qualified Immunity shields public officials from suits for damages under 42

U.S.C. § 1983, unless their actions violate clearly-established rights of which an

objectively reasonable official would have known.  Saucier v. Katz, 533 U.S. 194

(2001); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Ricciuti v. N.Y.C. Transit

Authority, 124 F.3d 123, 127 (2d Cir. 1997).  The doctrine of qualified immunity shields

government officials from liability for civil damages as a result of their performance of

discretionary functions, and serves to protect government officials from the burdens of

costly, but insubstantial, lawsuits.  Harlow, 457 U.S. at 817-18; Lennon v. Miller, 66 F.

3d 416, 420 (2d. Cir. 1995).  This policy is justified in part by the concern that the "fear

of personal monetary liability and harassing litigation will duly inhibit officials in the

discharge of their duties." Anderson v. Creighton, 483 U.S. 635, 638 (1987).  This

doctrine "'strikes a balance between the need, on one hand, to hold responsible public

officials exercising their power in a wholly unjustified manner and, on the other hand,

to shield officials responsibly attempting to perform their public duties in good faith

from having to explain their actions to the satisfaction of a jury.'" Poe v. Leonard, 282

F.3d 123 (2d Cir. 2002), citing Locurto v. Safir, 263 F. 3d 154, 162-3 (2d Cir. 2001).

Overcoming qualified immunity is a two-part process.  Thomas v. Roach, 165

F.3d 137, 142 (2d Cir. 1999).  First, the plaintiff must allege the violation of a clearly-

established constitutional or statutory right. Id. Second, qualified immunity will only be

denied if a reasonable official should have known that the challenged conduct violated

that established right.  Id. at 142-143, citing Rodriguez v. Comas, 888 F.2d 899, 901

(1st Cir. 1989).  In other words, "even where the plaintiff's federal rights and the scope

of the permissible conduct are clearly established, the qualified immunity defense

protects a government actor if it was 'objectively reasonable' for him to believe that his

actions were lawful at the time of the challenged act." Id., Lennon, 165 F.3d at 420,

citing Anderson, 483 U.S. at 641.  "The objective reasonableness test is met—and the

defendant is entitled to immunity –if 'officers of reasonable competence could

disagree' on the legality of the defendant's action." Thomas, 165 F.3d at 143, citing

Lennon, 66 F.3d at 420.

**C.    Standard for Summary Judgment on Qualified Immunity.**

In evaluating a motion for summary judgment on the basis of qualified immunity,

the Court must, as a threshold matter, inquire whether, construing the facts most

favorably to the plaintiff, "'the facts alleged show the officer's conduct violated a

constitutional right.'" Poe v. Leonard, 282 F.3d 123, 132 (2002), citing Saucier v. Katz,

533 U.S. 194 (2001).  If so, the Court must determine whether the right in question

was clearly established at the time the violation occurred, in other words, whether "'it

would be clear to a reasonable officer that his conduct was unlawful in the situation he

confronted.'" Id.  The second inquiry has been further refined, and qualified immunity is

established when "'(a) the defendant's action did not violate clearly established law, or

(b) it was objectively reasonable for the defendant to believe that his action did not

violate such law.'" Id., citing Teirney v. Davidson, 133 F. 3d 189, 196 (2d Cir. 1998).

10

"As the Supreme Court has explained, the 'concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular conduct....if the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to' immunity.  Thus, if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendant's conduct under the circumstances, qualified immunity applies."  Id. (citations omitted).

### D.    The City of Norwich, Police Department of the City of Norwich and Louis J. Fusaro, *in his official capacity*, are entitled to summary judgment on plaintiff's §1983 claims, which all sound in negligence.

In order to state a § 1983 claim against a municipal defendant, Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978), requires that the plaintiff allege that the unconstitutional act occurred pursuant to some official policy or governmental custom.   Lack of proper training can only support a *Monell* claim if the failure to supervise or the lack of a proper training program for police officers was so severe as to reach the level of "gross negligence" or deliberate indifference to the rights of a plaintiff.  City of Canton v. Harris, 489 U.S. 378 (1989); Walker v. City of New York, 974 F.2d 293, 297 (2d Cir. 1992), cert denied 113 S. Ct. 1387 (1993); Owens v. Haas, 601 F.2d 1242 (2d Cir. 1979), cert. denied, 444 U.S. 980.  Claims of negligence, however, do not support a constitutional violation.  Daniels v. Williams, 474 U.S. 327, 331 (1986).  Plaintiff in this case has not pled, let alone put

forward any evidence that would support gross negligent or deliberate indifference in the Police Department supervision of Daigle.  See **Exhibit H**, Deposition of Kristen Ejchorszt.  Plaintiff alleges only that the Chief "should have known" about Daigle's actions, a garden variety common law negligent supervision claim.  There is no evidence that Chief Fusaro  had notice Daigle was going to take semi-nude photographs of the plaintiff.  Id., at p. 143-146.

In Zanghi v. Incorporated Village of Old Brookville, 752 F.2d 42 (2d Cir. 1985), the Second Circuit reviewed a case with similar claims of negligence.  In that case, the complaint alleged that "'[t]he torts committed against the plaintiff by the individual defendants were caused due to the negligence' of the municipal defendants because they knew of should have known that 'the individual defendants were unfit to serve as peace officers and were dangerous to members of the public such as the plaintiff.'" Id. at 45.  The Second Circuit confirmed that "Mere negligence in permitting the continued employment of personnel, however, does not rise to the level of "action pursuant to official municipal policy of some nature [which] cause a constitutional tort." Id., citing Monell, 436 U.S. at 691 and Cattan v. City of New York, 523 F. Supp. 598 601-02 (S.D..N.Y. 1981)(allegation of continued employment of a police officer when municipal defendant knew or should have known of his vicious propensities insufficient to state a claim under Section 1983.)

In sum, as plaintiff's §1983 claims in the Eleventh Count against the Police Department, the City of Norwich and Chief Fusaro, in his official capacity, are

premised on the negligent supervision claim brought against Chief Fusaro in the Ninth

Count, they fail as a matter of law.  As only claims of negligence are pled, and there is

no evidence which would support any culpable conduct to support a municipal policy

resulting in plaintiff's constitutional deprivation, these defendants are entitled to

summary judgment on the Eleventh Count of the Complaint.

### E. Daigle's Action in Taking Semi-Nude Photographs of the Plaintiff was so Obviously Inappropriate that Plaintiff Cannot Prove a Lack of Municipal Policy.

Plaintiff's §1983 claims also fail under a claim of inadequate training because

Daigle's actions were so inappropriate that so specific training would have been

required.

Because a municipality has no respondent superior liability under § 1983, the

plaintiff must show that inadequate training or supervision was so likely to result in the

violation of constitutional rights, that the policymakers of the city can reasonably be

said to have been deliberately indifferent to the need for training.  City of Canton v.

Harris, 489 U.S. 378 (1989).

In the Second Circuit, to show deliberate indifference, the plaintiff first prove

that a policymaker knows 'to a moral certainty' that the employees will confront a given

situation. Walker v. City of New York, 974 F.2d 293, 297 (2d Cir. 1992), cert. denied,

113 S.Ct. 1387 (1993).  A policy maker does not exhibit deliberate indifference by

failing to train employees for rare or unforeseen events.  Id.  Second, a plaintiff must

show that the situation either presents the employee with a difficult choice of the sort

that training or supervision will make less difficult or that there is a history of

employees mishandling the situation.  Id.  Third, the plaintiff must show that the wrong

choice by the city employee will frequently cause the deprivation of a citizen's

conditional rights.  Id. However, where the employee's action is obviously

inappropriate, no "training" is required, and the municipality cannot be held liable for

the employee's rogue conduct.  Daigle's alleged semi-nude photography of the plaintiff

falls within this class of cases where no specific training would be required.   In

Walker, the plaintiff claimed the police department was deliberately indifferent to his

rights by failing to train and supervise officers "not to Commit perjury or aid in the

prosecution of the innocent."   The Second Circuit explained:

> It is not enough to show that a situation will arise and that taking the wrong
> course in that situation will result in injuries to citizens…City of Canton also
> requires a likelihood that the failure to train or supervise will result in the officer
> making the wrong decision.  Where the proper response …is obvious to all
> without training or supervision, then the failure to train or supervise is generally
> not 'so likely' to produce a wrong decision as to support an inference of
> deliberate infidderence by city policymakers to the need to train or supervise.
> Id. at 299-300.

Officers also do not need training not to engage in inappropriate behavior or

behavior which would violate the basis norms of human conduct and common sense.

See Hernandez v. Borough of Palisades Park Police Dep't, 2003 WL 202441

(3d Cir. 2003)(no need to train police officers not to commit robbery)(not reported);

Barney v. Pulsipher, 143 F.3d 1299, 1308(10th Cir. 1998)(no training needed against

sexual assault of inmates); Hayden v. Grayson, 134 F.3d 449, 457 n.14 (1st Cir.

1998)(no need for training where officer intent on discriminating against a particular class of crime victims and resulted from alcohol abuse, lassitude or personal animosity); Floyd v. Waters, 133 F.3d 786, 796 (11 Cir. 1998)(the BOE was entitled to rely on the common sense of its employees not to engage in wicked and criminal conduct); Sewell v. Town of Lake Hamitlon, 117 F.3d 488, 490 (11th Cir. 1997)(sexual molestation of arrestee); Andrew by Fowler, 98 F.3d 1069, 1077 (8th Cir. 1996)("In light of regular law enforcement duties of a police officer, we cannot conclude that there was a potentially obvious need for the city to specifically train officers not to rape young women).

Daigle did not need any training to alert him to the fact that he should not take semi-nude photographs of a young volunteer under the guise of legitimacy as part of the underage liquor operation.  His actions violate common sense and public policy. He has also received sexual harassment training and prisoner transport training. **Exhibit A**, Affidavit of Warren Mocek, ¶ 16.  Same sex officers were required for prisoner transport and body searches.  **Exhibit I**, Prison Transport Policy, p. 2-3, 7. Daigle violated department policy.  **Exhibit A**, ¶ 15.  He was discharged for his actions.  **Exhibits A** and **D**.  No more specific training would have been required. Daigle should have known better based upon basic principles of human decency, common sense and police department training and policy.  His rogue, prurient actions cannot be imputed to the Department or the City, which were completely unaware of his design.

For these reasons also, plaintiff cannot prevail on her §1983 claim against Chief Fusaro, the Norwich Police Department and the City of Norwich.  Therefore, summary judgment should enter on Count Eleven.

### F.     Plaintiff's §1983 Claim Against Lounsbury Fails for Lack of Personal Involvement.

Officer Lounsbury had no personal involvement in the alleged photographing of the plaintiff.  Neither was he aware of the improper photographs.  **Exhibit H**, Deposition of Kristen Ejchorszt, at p. 120-122, 123, 128, 131-133.  He was not present.  Id., at p. 123.

It is well settled in the Circuit that "'personal involvement of [a] defendant[ ] in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983'".  Wright v. Smith, 21 F. 3d 496, 501 (2d. Cir. 1994)(quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991); See also, Simpson v. Denardo, 2004 WL 1737444, *5 (D.Conn.), Docket No.3:02CV1471(MRK).

Due to the fact that Lounsbury had no idea or knowledge of Daigle's plans to photograph the plaintiff, he also could not have intervened to protect the plaintiff from Daigle' s unconstitutional actions.  In Segreto v. Kirschner, 977 F.Supp. 553, 563 –564 (D.Conn.1997), Judge Goettel described the law regarding the duty to intervene:

> Our Court of Appeals recognizes that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.), *reh'g denied,* 27 F.3d 29 (2d Cir.1994). (citations omitted). An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or

16

> has reason to know ... that excessive force is being used, or that any
> constitutional violation has been committed by a law enforcement official. *Id.*
> [citing *O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir.1988)]. In order for liability to
> attach, there must have been a realistic opportunity to intervene to prevent the
> harm from occurring. *Id.*

Officer Lounsbury had no such opportunity, as he did not know that Daigle was taking

pictures of the plaintiff.  Therefore, no § 1983 claim may lie against him.

### G.     Officer Lounsbury is Entitled to Qualified Immunity

 Because Lounsbury had no notice of Daigle's plans, it was also objectively

reasonable for Lounsbury to believe that he did not have to protect the unconstitutional

photography of the plaintiff.  Lounsbury concedes that the allegations may support a

clearly established constitutional violation by Daigle.  However, Lounsbury's actions

were objectively reasonable given the information known to him at the time, which was

none.  In addition, as Judge Goettel noted in Segreto v. Kirschner, supra, "the precise

contours of the rule as it applies to onlooker officers are often murky." Id., citing

Martinez v. Colon, 54 F.3d 980 (1st Cir.), cert denied, 516 U.S. 987 (1995).  Lounsbury

cannot even qualify as an "onlooker."  In addition, Daigle outranked Lounsbury, so

even if Lounsbury had been aware of Daigle's conduct, and had the opportunity to

intervene, he may not have had a realistic opportunity to prevent the harm.  Segreto,

supra at 564.  Therefore, Lounsbury is entitled to qualified immunity.

### H.     Equal Protection

 In order to establish a violation of equal protection, a plaintiff must establish

that:  (1) they are a member of a protected class; (2) that they, as compared with

others similarly situated, were selectively treated; and (3) that such treatment was based on impermissible consideration such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. African Trade & Information Center, Inc. v. Abromaitis, 294 F.3d 355 (2d Cir. 2002). There is no evidence that the defendants treated the plaintiff differently than similarly situated persons.  See **Exhibit H**, Deposition of Kristen Ejchorszt, p. 152-154. Neither were these essential elements of an equal protection violation pled in the complaint.  Plaintiff only claims the investigation was "inadequate".  Id., at p. 151. Even if the investigation was inadequate, which is expressly denied, the plaintiff could not state a constitutional claim.

As soon as plaintiff made complaint, Chief Fusaro ordered an investigation, which was completed by Deputy Chief Mocek.  **Exhibit A**, Affidavit of Warren Mocek. Deputy Chief Mocek devoted a full six months to the investigation into Daigle's activities.  Id.  Thus, lacking any evidence of disparate treatment, the defendants are entitled to summary judgment on the equal protection claims.

I.    **Plaintiff's Common Law Claims Against the City of Norwich and Chief Fusaro, in his Official Capacity, are Barred by the Doctrine of Governmental Immunity at Common Law And Pursuant To C.G.S.§ 52-557n.**

Count Nine is a common law negligent supervision claim.  At common law, municipalities are immune from claims of negligence involving duties which involve discretion.  Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 180-181 (1988).

18

The law is clear that the supervision of employees is a discretionary duty for which governmental immunity applies.  Id.   Given this state of the law, there cannot be a serious argument to the contrary.  Moreover, courts have held that the acts of hiring, supervising, training, and firing police officers are discretionary acts, afforded the protection of governmental immunity.  See, Stiebitz v. Mahoney, 144 Conn. 443, 446-448 (1957); Coletosh v. City of Hartford, Superior Court, Judicial District of Hartford at Hartford, Docket No. 0573462 (Wagner, JTR., April 13, 1999)(Copy attached as **Exhibit J**); Doe v. Nunes, Superior Court Judicial District of Hartford at Hartford/New Britain at New Britain, Docket No. 0463832 (Handy, J., March 15, 1995)(Copy attached as **Exhibit K**); Cook v. City of Hartford, Superior Court, Judicial District of Hartford/New Britain at New Britain, Docket No. 0362482 (Aurigemma, J., August 31, 1992)(Copy attached as **Exhibit L**).  C.G.S. § 52-557n[2] also provides immunity to municipalities for actions of their officials which involve judgment and discretion.  Therefore, the plaintiff's negligent supervision claim is barred as a matter of law and the defendants are entitled to summary judgment on Count Nine.

---

[2] (a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by:  (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149.  (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by:  (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or willful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or

**J.     The Indemnification Claims in Count Ten are also Barred.**

The plaintiff has also brought a claim for indemnification in Count Ten pursuant to C.G.S. §7-465.  Pursuant to this section, a municipality is obligated to pay on behalf of any employee, all sums which the employee becomes obligated to pay by reason of the liability imposed upon such employee for infringement of any person's civil rights, or for physical damages to person or property, if the employee, at the time of the occurrence, was *acting in the performance of his duties and within the scope of his employment*, and if such occurrence, was *not the result of any willful or wanton act of such employee in the discharge of such duty*.  Daigle was not acting in the performance of his duties and acted intentionally when he photographed the plaintiff. Thus, C.G.S. § 7-465 squarely precludes the City's liability for indemnification.  Wells v. Town of Plainfield, 2003 WL1787971, *8 (Conn. Supra. 2003)(Attached as **Exhibit M**).

In addition, because indemnification is a derivative claim and the plaintiff's claim against Fusaro for negligent supervision is barred by governmental immunity, the indemnification claim is also barred.

In order to plead an indemnification claim as to Lounsbury's conduct, the plaintiff must first plead and prove a count in negligence against him, which she has

discretion as an official function of the authority expressly or impliedly granted by law.  (Emphasis added.)

not done.  As explained by the Connecticut Superior Court in <u>Violano v. Fernandez</u>,

WL 22481202, *3 -4  (Conn. Super. 2003)(**Exhibit N**):

> Section 7-465, although entitled [a]ssumption of liability for damage
> caused by employees, imposes no liability upon a municipality for breach
> of any statutory duty of its own ... The obligation imposed by this statute
> is indemnification for the legal liability arising out of certain tortious
> conduct of the municipal employee ... The municipality's liability is
> derivative." (Citations omitted; internal quotation marks omitted.) *Ahern v.*
> *New Haven,* 190 Conn. 77, 82, 459 A.2d 118 (1983). "A plaintiff bringing
> suit under ... § 7-465 first must allege in a separate count and prove the
> *employee's* duty to the individual injured and the breach thereof. Only
> then may the plaintiff go on to allege and prove the [municipality's]
> liability by indemnification ... Thus, in a suit under § 7-465, any municipal
> liability which may attach is predicated on prior findings of individual
> negligence on the part of the employee and the municipality's
> employment relationship with that individual." (Citations omitted;
> emphasis in original; internal quotation marks omitted.) *Wu v. Fairfield,*
> 204 Conn. 435, 438, 528 A.2d 364 (1987). 'While § 7-465 provides an
> indemnity to a municipal employee from his municipal employer in the
> event the former suffers a judgment under certain prescribed conditions,
> it is quite clear that the municipality does not assume the liability in the
> first instance.' (Internal quotation marks omitted.) *Fraser v. Henninger,*
> 173 Conn. 52, 56, 376 A.2d 406 (1977). 'A claim under § 7-465 should
> contain [therefore], two counts, one against the agent, and the second
> against the municipality in indemnification.' (Citation omitted.) *Caruso v.*
> *Milford,* 75 Conn.App. 95, 100 n. 5, 815 A.2d 167, cert. denied, 263
> Conn. 907, 819 A.2d 838 (2003).  In count two, the plaintiffs alleged a
> cause of action in negligence against Fernandez, which has been
> stricken. Without a valid claim in negligence against a municipal
> employee, no derivative liability can be imposed on the municipality in an
> action for indemnification under § 7-465. *Wu v. Fairfield, supra.* The court
> finds, therefore, that the motion to strike the third count is granted.

As the plaintiff has not pled any separate count of negligence against Lounsbury, the indemnification count fails.

In addition, although the plaintiff cites C.G.S. § 52-557n in the title of the Tenth Count claiming "indemnification", this statute is not an indemnification statute. By its express terms, it is used to plead negligence directly against a municipality. However, Count Ten contains no such direct cause of action.

For all these reasons, the defendants are entitled to summary judgment on the Tenth Count.

## III.     CONCLUSION

For the forgoing reasons, plaintiff's §1983 claim against Chief Fusaro, the Norwich Police Department and the City of Norwich fails. Plaintiff's negligent supervision claim cannot support § 1983 liability. Defendant Lounsbury was not personally involved with the photography of the plaintiff, a prerequisite to § 1983 liability. He is also entitled to qualified immunity. Plaintiff's common law negligent supervision claim fails pursuant to governmental immunity. The City of Norwich cannot be required to indemnify Daigle for his intentional conduct pursuant to the terms of C.G.S. § 7-465. Therefore, summary judgment should enter in Counts Nine, Ten and Eleven of plaintiff's complaint.

DEFENDANTS,
CITY OF NORWICH, POLICE
DEPARTMENT OF THE CITY OF
NORWICH, LOUIS J. FUSARO and MARK
LOUNSBURY


By_____/s/_Beatrice S. Jordan____ _
    Beatrice S. Jordan
    ct22001
    Howd & Ludorf, LLC
    65 Wethersfield Avenue
    Hartford, CT  06114
    (860) 249-1361
    (860) 249-766 (Fax)

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 16th day of January, 2006.

Barbara L. Cox, Esquire
Gallagher & Calistro
1377 Boulevard
P.O. Box 1925
New Haven, CT  06509-1925

Eric P. Daigle, Esquire
James M. Sconzo, Esquire
Halloran & Sage, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT  06103-4303

_____ /s/  Beatrice S. Jordan_ __
Beatrice S. Jordan