Exhibit I

## NORWICH POLICE DEPARTMENT

### OPERATIONS ORDER

**Title:** PRISONERS - SEARCHING, RESTRAINING, AND

TRANSPORTING PROCEDURES

**Effective Date:** 12/13/90

Order # OP-4

___ New     Page _1_ of _17_

_X_ Replaces Order # OP-4, OP-39

___ Amends Order # _____

**Distribution:** All Sworn Personnel

---

I.   PURPOSE:

The issues addressed in this Operations Order are designed to serve two basic purposes:

A. Protect the basic human dignity and legal rights of all persons coming under the custody and control of the department and ensure that such persons are treated fairly and humanely without favor or discrimination based on race, sex, religion, national origin, social or economic position.

B. Minimize the chance of escape or the destruction of evidence while maximizing the department's ability to protect the health, safety, and well-being of the public, prisoners, and department employees.

II.  SEARCHING PRISONERS:

A. GENERAL:

One can never assume that someone else has searched a prisoner. It is the responsibility of each officer to ensure that the prisoner he is transporting, processing, incarcerating, etc. is searched prior to the commencement of such activity.

B. TRANSPORTING:

Prior to any prisoner being transported in a police cruiser for any reasons, i.e., to court, to be processed, to a medical facility, to another agency, said prisoner shall be searched by the transporting officer(s).

(1) EXCEPTION:

When the danger to the officer, prisoner, or public is greater as a result of the search than it would be with the immediate removal of the prisoner from the area.

Operations Order  OP-4  Continued  Page 2

C.   INCARCERATION:

Prior to any prisoner being incarcerated within the Police Facility,  the incarcerating officer(s)  shall conduct a careful search of  the prisoner and  remove all evidence,  contraband,  property unlawfully possessed or which may become evidence,  and any property that could be used to inflict injury  to self or others,  or which may be used to deface property or aid in escape.   In all cases,  belts,  jewelry,  shoelaces,  matches,  cigarette lighters,  ties,  and other such potentially hazardous materials shall  be removed  and  properly  inventoried and secured  according  to department procedures.

(1)  MD-500 SONIFRISKER:

(a)  The Department has purchased a MD-500 Sonifrisker.  Said unit is located in the Booking Area along with operational instructions.

(b)  All  persons who cannot be strip searched shall be checked  with the Sonifrisker prior to being placed into a cell.

(c)  Should  the  Sonifrisker activate,  the person will be asked  to remove  the activating item(s).   In the event that  the  person refuses to remove such item(s),  such refusal shall constitute a reasonable  belief  that items  are weapons,  contraband or controlled substance.

D.   VISITATION:

In the event that the prisoner is allowed to have a visitor,  the prisoner shall be searched prior to being placed back into the cell block.

E.   SEXUAL CONSIDERATION:

As a general rule, prisoners should be searched by someone of the same sex as the prisoner.   Only under exigent circumstances, such as the immediate destruction of  evidence  or the likelihood of injury  to  the  prisoner, public or officer, is a search of a prisoner by an officer of the opposite sex permissible.   In such cases,  the searching officer shall  use  the modified "back of  hands" technique for the search  and  shall  minimize physical touching.

(1)  DOCUMENTATION:

In  the event that an officer feels that it is necessary to search  a member  of the opposite sex,  said search shall be documented in  the arrest  report  or  as a supplement  to  said  report,  including  the justification for the search.

Operations Order  OP-4  Continued  Page 3

F.  STRIP AND BODY CAVITY SEARCHES:

(1)  DEFINITION - "STRIP SEARCH":

"Means having an arrested person remove or arrange some or all of his or her clothing or, if an arrested person refuses to remove or arrange his or her clothing, having a peace officer or employee of the police department remove or arrange the clothing of the arrested person so as to permit a visual inspection of the genitals, buttocks, anus, female breasts or undergarments used to cloth said anatomical parts of the body."

(2)  PROCEDURES:

(a)  STRIP SEARCHES

- FELONY ARRESTS

a.  Any officer wishing to conduct a strip search of a person arrested for a felony shall adhere to subsection (b. through g.) of MISDEMEANOR AND MOTOR VEHICLE OFFENSES below.

- MISDEMEANOR AND MOTOR VEHICLE OFFENSES

a.  No person arrested for a motor vehicle violation or a misdemeanor offense, shall be strip searched unless there is a reasonable belief that the individual is concealing a WEAPON, A CONTROLLED SUBSTANCE, OR CONTRABAND.

b.  No employee of the Department may conduct a strip search until such employee has obtained written permission from one of the following:

- The Chief of Police

- The Deputy Chief of Police

- A Division Commander

- A Shift Supervisor

c.  No employee shall conduct a strip search until such employee has completed a Strip Search Report (Norwich Police Department Form #80).

d.  A copy of the Strip Search Report shall be given to the person subjected to the strip search.

e.  All strip searches shall be performed by a person of the same sex as the person being searched.

Operations Order  OP-4  Continued  Page 4

     f.   The  search will be conducted in an area where said  search cannot be observed by anyone not physically conducting  the search or not absolutely necessary to conduct the search.

     g.   No more  persons shall be involved in the search  than  is necessary to ensure the safety of the person being searched and the persons conducting the search.

  (b)  BODY CAVITY SEARCHES

     a.   No employee of the Department shall conduct a search of any body cavity other than the mouth, without a search warrant.

     b.   The mouth  is  not a body cavity relative to this law  and therefore is not covered by it.

     c.   Said search warrant, in addition to establishing the normal probable cause requirement, shall specify the following:

       -  That the  search will  be performed under  sanitary conditions  and conducted either by or under  the supervision of a person licensed to practice medicine in accordance  with Chapter 370 of the Connecticut  General Statutes.

     d.   If  the  body cavity search is conducted by someone  other than  a licensed physician,  said search shall be performed by a person of the same sex as the person being searched.

     e.   The body cavity search shall be conducted in an area  where said  search  cannot be observed by anyone  not  physically conducting  the  search or not  absolutely  necessary  to conduct the search.

     f.   No more  persons shall be involved in the search  than  is necessary to ensure the safety of the person being searched and the persons conducting the search,  and shall be of the same sex as the person being searched.

     g.   A copy of the search warrant shall be given to the  person searched  in  accordance with Section 53-33c of  the Connecticut General Statutes unless such service can be dispensed with according to said statute.

III.   PRISONER RESTRAINT:

A.   HANDCUFFS:

     Only double-locking handcuffs approved by the department will be used.

Operations Order  OP-4  Continued  Page 5

(1)  A prisoner, while in custody, being brought to or from a police facility or being transported in a vehicle shall be handcuffed with his hands in the rear unless otherwise directed by a supervisor.

(2)  When applied, handcuffs will be secured in such a manner as not to cause pain or discomfort to the prisoner.  Cuffs should be tightened so that the prisoner's hands cannot slip free, but not so tight that circulation is impeded.

(3)  Prisoners should be handcuffed with the palms facing outward, making it more difficult to manipulate the cuffs with the fingers.

(4)  Handcuffs shall be placed on in the double-locked position to prevent slipping of the ratchet and tightening of the cuffs.

(5)  Prisoners shall not be handcuffed to the fixed part of any automobile, boat or aircraft, while being transported.

(6)  If a prisoner is injured, physically handicapped, or obese, thereby creating a possibility of injury or the exacerbation of a present injury, handcuffs shall not be applied, or may be applied with the person's arms in front of his body. In such cases, a restraining belt shall be used or the prisoners belt shall be turned around and buckled in the rear and the handcuffs passed through the belt when applied.

(7)  If circumstances are such that the public, the prisoner, or the officers would be placed in greater danger as a result of following the above procedures than by pursuing a different course of action, the specific action taken and the justification for it shall be so noted in the arrest report or any applicable supplement.

(8)  Whenever there is injury as a result of the application of handcuffs, or a complaint of injury, such injury or complaint of injury shall be noted in the report and photographs taken. Photographs shall be taken even if there is no outward sign of injury,

(9)  Whenever there is injury or the complaint of injury as a result of handcuffs being applied, and the prisoner is within our custody and will not be released in the immediate future, said prisoner will be transported to the W.W. Backus Hospital for treatment.

B.  LEG IRONS:

(1)  There are two pair of leg irons located in the Booking Room at Police Headquarters.

(2)  Leg irons are to be used in cases of combative or high-risk escape prisoners.

(3)  Handcuffs are not to be used in lieu of leg irons.

Operations Order  OP-4  Continued  Page 6

     (4)  All applicable regulations relative to handcuffs are also  applicable to leg irons.

C.  FLEXCUFFS:

     (1)  Flexcuffs are located in the armory and are to be used in cases where mass arrests are expected and the supply of handcuffs are exhausted.

     (2) ·All applicable regulations relative to handcuffs are also applicable to flexcuffs.

D.  WAIST BELTS:

     (1)  There are two (2) waist belts located in the Booking Room at Headquarters and are to be used in the following situations:

        (a)  Whenever a prisoner is transported from Headquarters to any other location.

        (b)  Whenever a prisoner is picked up from another agency and transported to Headquarters or another location.

IV.  PRISONER TRANSPORT:

A.  MARKED CRUISER PREFERRED:

Whenever possible, marked cruisers shall be used for prisoner transport, as all marked cruisers are equipped with security screens, the door handles in the rear have been removed, and the rear window handles have been removed or, in the case of electronic windows, have been disconnected.

B.  VEHICLE INSPECTION:

     (1)  Prior to transporting a prisoner, the transporting officer shall search the vehicle to ensure that there are no weapons, contraband, etc. within the vehicle. Upon completion of the transport, the vehicle shall be searched again.

     (2)  At the beginning of each tour of duty, the cruiser driver shall inspect his vehicle to ensure that there is no contraband, evidence, or weapons within the vehicle, that the vehicle itself is equipped with required equipment, that the fluid levels are adequate, that the vehicle is operating properly and the tires are inflated properly and have sufficient tread.  In the event that a transport is to be conducted outside of the city, the transporting officer shall ensure that the vehicle contains a spare tire and lug wrench.  If it is expected that gas will have to be procured, the transporting officer will bring sufficient money and will obtain receipts for anything purchased.

Operations Order  OP-4  Continued  Page 7

C.  OFFICER SEATING:

(1)  TWO OFFICERS PRESENT:

It is preferred that there be two officers present during prisoner transport.  The second officer shall always sit in the rear seat directly behind the operator.

(2)  ONE OFFICER PRESENT:

(a)  MARKED CRUISER - The prisoner shall be placed in the rear seat.

(b)  UNMARKED CRUISER - The prisoner shall be placed in the front seat and secured in place with the seat belt.

D.  SEXUAL CONSIDERATIONS:

(1)  Whenever possible, prisoners should always be transported by an officer of the same sex as the prisoner.

(2)  Whenever there are two officers of the opposite sex, the officer that is the same sex as the prisoner shall ride in the rear seat with the prisoner.

(3)  Whenever an officer transports a prisoner of the opposite sex, the following procedures shall be complied with:

(a)  The officer shall give the starting point, time, and odometer reading at the beginning of the transport.

(b)  The officer shall give the ending point, time, and odometer reading at the end of the transport.

(c)  The Dispatcher shall log said information on the daily "Radio Log/Complaint Form".

(d)  In the event that there are two officers in separate cruisers, the second officer shall follow the transporting vehicle keeping same in sight at all times.

E.  TRANSPORTING MORE THAN ONE PRISONER:

(1)  No more than two prisoners shall be transported in a cruiser at the same time.

(2)  Prisoners that are a danger to each other or have been involved in a controversy or fight with each other shall not be transported in the same cruiser.

Operations Order  OP-4  Continued  Page 8

(3)  Discretion  should  be  used  when transporting  prisoners  that  have
committed  a  crime  together when they may have  to  be  interviewed
relative to that crime at the end of the transport.

(4)  Prisoners  of the opposite sex should  not  be  transported in the  same
cruiser  unless  they are co-defendants and (3) above has been  taken
into consideration.

F.   RESPONDING TO CALLS FOR SERVICE OR EMERGENCIES WHILE TRANSPORTING:

(1)  Officers  transporting prisoners shall not respond to  citizen  calls
for  service  unless  there is a risk of death or injury to  a  third
party and they have obtained permission from a supervisor.

(2)  In  the  event that the transporting officer is given  permission  to
stop and assist, he shall take all steps to ensure that the  prisoner
is  not  injured, endangered, or allowed to escape.   The  Dispatcher
shall immediately send additional backup units.  Upon arrival of  the
first  backup unit, the transporting officer shall advise him of  the
situation  and if not absolutely needed shall resume  the  transport,
giving his mileage, starting point and time.

(3)  If  the transporting officer encounters a non-emergency need for  law
enforcement  service,  i.e.  accident  without  injuries,  disabled
vehicle, etc., he shall advise the Dispatcher of  the  necessary
information.   Another  officer shall be assigned to investigate  the
problem,  and  shall explain to the citizen the reason why the  first
officer was unable to stop and render assistance.

G.   PRISONER COMMUNICATION DURING TRANSPORT:

Prisoners  will not be permitted to communicate with anyone other than law
enforcement personnel during transport.  Nor will family members, friends,
or attorneys be allowed to accompany prisoners during transport.

H.   MEALS DURING TRANSPORT BY MOTOR-VEHICLE:

(1)  Transportations involving meal stops will always be done with two (2)
officers.

(2)  Taking of meals will not be allowed unless the transportation exceeds
four (4) hours in duration.

(3)  Restaurants will be chosen at random and not unduly crowded.

(4)  One officer will always remain with the prisoner and if at all possi-
ble, the meal should be consumed in the vehicle.

(5)  Although  the prisoner's hands  may be  freed  while  eating,  both
officers  should  remain  very  alert  and  the  prisoner  should  be
compelled to remain in the seat belt.

Operations Order  OP-4  Continued  Page 9

I.  LAVORATORY PROCEDURES:

   (1)  The officer should make the decision as to the facility to be used.

   (2)  The officer should make the decision as to the stall to be used.

   (3)  Whenever possible, an unoccupied restroom should be used.  If necessary, the public should be prevented from using the restroom while the prisoner is using same.

   (4)  If there are two officers, one should inspect the restroom and the stall prior to the prisoner being brought in.  Inspection should include the water tank if one is present.  If there is only one officer, he should do the inspection prior to removing the handcuffs.

   (5)  Handcuffs should be removed just prior to the prisoner entering the stall and reattached immediately upon the prisoner completing washing up.  The prisoner is to be kept under visual observation at all times except when actually in the stall, at which time the officer shall remain directly outside of the stall.

J.  TRANSPORTATION OF HANDICAPPED OR MEDICALLY/MENTALLY ILL SUBJECTS:

   (1)  Handicapped persons and persons who are physically or mentally ill persons present conditions that require special care and attention. special devices, treatment, or medicine may be required.  In addition, restraining devices may or may not be appropriate. Transporting officers should consult with a supervisor prior to transporting such persons.

   (2)  Efforts should be made to determine if a physician has prescribed any special treatment or conditions that would affect or be affected by transportation.

   (3)  Prisoners requiring medical treatment or who are paraplegic or quadriplegic will be transported in an ambulance, wheelchair van or other suitable vehicle staffed with personnel medically qualified to administer whatever care may be necessary.

   (4)  Handicapped prisoners should be evaluated for escape possibility and probability prior to the use of restraining devices.  Such devices should only be used when the escape possibility and probability is high and a physician has indicated that such use would not injure the prisoner.

   (5)  Straight jackets and restraint bags are only to be applied by medical personnel.  Officers may assist in restraining a combative prisoner in order that medical personnel may apply said devices.

Operations Order  OP-4  Continued  Page 10

    (6)  Whenever a prisoner is injured prior to transportation,  he shall  be evaluated as  to  the  nature  of  the injury and  if  he  should  be transported in an ambulance or the cruiser.

    (7)  Whenever a prisoner is transported in an ambulance, wheelchair van or other such vehicle, a police officer shall accompany the prisoner and remain  with  him  until  ordered  otherwise  by  a  supervisor.    The prisoner  should be kept under visual observation at all  times.    If the  attending physician prohibits this,  the officer  should  remain outside of the door of the room the prisoner is being treated in.  In the  event  that there are two doors or windows  present,  additional officer will be assigned to cover said points.

    (8)  Transporting officers shall follow handcuffing procedures  applicable to injured persons as outlined in Section III of this order.

K.  PRISONER IDENTIFICATION - PRIOR TO TRANSPORTING:

    (1)  Transporting  officers  shall make every effort to  ensure  that  the prisoner being  transported  is  the  correct  prisoner.    This  is especially true when transporting a prisoner from another agency  or institution.

    (2)  In  order  to  specifically  identify  a  prisoner,  the  transporting officer shall ask him/her specific questions,  such as name,  date of birth, current charge, and other identifying data that can be readily checked against known data.

    (3)  If  possible,  a photo  should be obtained or  a  complete  physical description including such things as tattoos, scars, etc.

    (4)  If possible, the transporting officer should determine how the agency or  institution  that  is  surrendering  the  prisoner made  their identification.

    (5)  When  the  transporting  officer  has a reasonable doubt  as  to  the prisoner's  identity,  he shall contact his immediate supervisor  for additional assistance in making the identification as well as further advice and instructions.

    (6)  The  transporting  officer  shall check the arrest log  for  the cell number  and  match  it  against the  prisoner property  receipt  and prisoner's name.

L.  DOCUMENTATION FOR PRISONER TRANSPORTS:

    (1)  The  following  documentation must  accompany  prisoners  being transported  to  various destinations and transporting officers  must follow the specific intake and security procedures in each case.

<u>Operations Order  OP-4  Continued  Page 11</u>

    (a)  <u>TO GA-21 FOR ARRAIGNMENT:</u>

- Daily Transmittal

- Uniform Arrest Report (UAR) or Misdemeanor Summons, or if a No Bail Compact State an Infractions Summons

- Arrest Warrant (if applicable)

- If a warrantless arrest, a copy of the Notarized Arrest Report.

- The prisoners property along with a Prisoner Property form.

- Upon arrival at GA-21, the call button is pressed by the transporting officer.

- The sheriffs will open the sallyport and allow entry.

- The cruiser doors will not be opened until the sallyport door is closed again.

- The transporting officer(s) will remove their weapons and store same in the gun port.

- The prisoner will be brought to the holding area and turned over to a sheriff.

- The sheriff will sign the Prisoner Property Receipt and the prisoner's property will be turned over to the sheriff.

- The transporting officer will remove his cruiser from the sallyport.

    (b)  <u>TO THE MONTVILLE CORRECTION CENTER:</u>

- A Writ of Mittimus

- The prisoner's property along with a Prisoner Property Receipt.

- The transporting officer will call the Correctional Center and advise them as to his name, department, prisoner's name, reason for incarceration, and his estimated time of arrival.

- Upon arrival, the gated entry on the left side of the Correctional Center is used for entry.

- The guard will open the gate which is video monitored.