Not Reported in A.2d                                                                                                                         Page 1
Not Reported in A.2d, 2003 WL 1787971 (Conn.Super.)
**(Cite as: 2003 WL 1787971 (Conn.Super.))**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut,
Judicial District of Windham.
Jason **WELLS** et al.,
v.
TOWN OF **PLAINFIELD** et al.
No. CV020068211.

March 24, 2003.

Raymond Savoy, for Jason Wells, Kevin Stranahan and Joseph Kelly.

Howd & Ludorf, Robinson & Cole LLP, Hartford, for Town of Plainfield, and David Allard.

Howd & Ludorf, Hartford, for Gary Sousa, Robert Hoffman, William Holmes and Michael Suprenant.

FOLEY, J.

I
*FACTS*

**\*1** On October 21, 2002, the plaintiffs, Jason Wells, Kevin Stranahan, and Joseph Kelly, filed an amended complaint [FN1] against the following defendants, both individually and in their individual capacities: the town of Plainfield; David Allard, First Selectman; Gary Sousa, Chief of Police; Robert Hoffman, Police Lieutenant; William Holmes, Police Sergeant; and Michael Suprenant, Police Sergeant. The complaint arises out of various incidents that allegedly occurred during each of the three plaintiffs' probationary employment periods as police officers for the town of Plainfield police department.

   FN1. The plaintiffs filed their original eight-count complaint on June 11, 2002. In the amended complaint, the plaintiffs withdrew counts four and six of the original complaint. Additionally, count seven of the original complaint, liability against the town of Plainfield pursuant to General Statutes § 52-557n, does not appear in the amended complaint. Count eight of the original complaint has been alleged as count seven of the amended complaint. Thus, the remaining counts in the amended complaint are counts one, two, three, five and seven.

The first, second and third counts, brought individually by Kelly, Stranahan, and Wells, respectively, are against all defendants, collectively, and allege constructive discharge. Each of these counts allege that during the time that the plaintiffs were employed by the Plainfield police department, the defendants instituted and maintained various policies, practices, customs and usages that created a work environment that was so difficult and intolerable, that a reasonable person would feel forced to resign.

Specifically, the first count alleges that Kelly was a probationary employee for the Plainfield police department from June 18, 2001, through October 28, 2001. This count alleges, *inter alia,* that on August 9, 2001, while on-duty, Kelly pursued a suspect, who was thought to be armed, into the woods. The first count further alleges that during the pursuit, Kelly called Sergeant Holmes for assistance but Sergeant Holmes failed to assist Kelly. As a result of the pursuit, Kelly was exposed to the suspect's blood. The count alleges that Sergeant Holmes refused to allow Kelly to remove his blood-soaked uniform or seek medical attention until after Kelly completed an arrest report for the suspect.

Thereafter, the first count alleges that Kelly filed a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:02-cv-01350-CFD    Document 104-15    Filed 03/17/2006    Page 2 of 8

Not Reported in A.2d    Page 2
Not Reported in A.2d, 2003 WL 1787971 (Conn.Super.)
**(Cite as: 2003 WL 1787971 (Conn.Super.))**

report concerning Sergeant Holmes to Lieutenant Hoffman. Around this time, Sergeant Suprenant approached Kelly and attempted to dissuade Kelly from pursuing the report against Sergeant Holmes. The count alleges that Kelly, who felt intimidated by Sergeant Suprenant, explained to Lieutenant Hoffman that he did not want to pursue the issue, to which Lieutenant Hoffman responded that he would "lean" on Kelly and "make life difficult" for him. According to the complaint, Kelly also reported Sergeant Holmes' acts to Chief Sousa, however, his complaint was never investigated.

The second count, brought by Stranahan, alleges that he was a probationary employee for the Plainfield police department from September 17, 2001, through November 8, 2001. Essentially, this count alleges that on several occasions, the defendants gave Stranahan a malfunctioning portable radio or, in other instances, he was required to work in the field without a radio. The second count further alleges that Stranahan reported that his radio was not working properly to Lieutenant Hoffman and this complaint was curtly dismissed by Lieutenant Hoffman. On December 18, 2001, after resigning, Stranahan wrote a letter to First Selectman Allard advising him of the intolerable work conditions at the police department. Both counts one and two also allege instances of harassment and allege that the defendants were required to work more than sixteen hours without an eight-hour break between regularly scheduled work shifts.

**\*2** The third count, brought by Wells, alleges that he was a probationary employee for the Plainfield police department from May 2001, through December 2001. As with counts one and two, the third count alleges that the town required Wells to work more than sixteen hours without an eight-hour break between regularly scheduled work shifts. Additionally, Wells alleges that he filed a complaint against Sergeant Suprenant with his labor union and was subsequently harassed by Sergeants Holmes and Suprenant for filing the complaint and assigned to work during Sergeant Suprenant's shift. The third count also alleges that Sergeant Suprenant informed another officer to do, among other things, "whatever it takes to get Wells out of here." Wells also wrote a letter to First Selectman Allard, advising him of the intolerable work conditions at the police department. Based on these factual allegations, counts one, two and three all allege that the various acts of the defendants constitute a common law claim for constructive discharge.

Count five incorporates the factual allegations of counts one through three and alleges that the acts constitute intentional infliction of emotional distress in that they were "extreme and dangerous" and that, as a result, all of the plaintiffs suffered emotional distress. Count seven seeks indemnification from the town of Plainfield for the violations alleged in counts one, two, three and five, pursuant to General Statutes § 7-465.

On October 31, 2002, the defendants, collectively, filed a motion to strike each of the counts on the grounds that each count is legally insufficient and fails to state a claim upon which relief may be granted. In counts one and two, the defendants move to strike on the grounds that the plaintiffs fail to state a viable claim for constructive discharge in violation of public policy, that the individual defendants are not liable for such a tort, and that the plaintiffs have failed to assert facts to support a viable claim against the town. In count three, the defendants move to strike on the ground that the plaintiffs do not state a viable claim for constructive discharge because the plaintiffs failed to plead contractual or public policy protection. In count five, the defendants move to strike on the ground that the plaintiffs fail to state a claim for intentional infliction of emotional distress because the acts alleged are not extreme and outrageous. In count seven, the defendants move to strike on the grounds that this count is derivative of the previous counts and should fail accordingly. On November 13, 2002, the plaintiffs, collectively, filed a memorandum of law in opposition to the defendants' motion to strike.

II
*LAW*
A
*CONSTRUCTIVE DISCHARGE*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:02-cv-01350-CFD    Document 104-15    Filed 03/17/2006    Page 3 of 8

Not Reported in A.2d                                                                                                          Page 3
Not Reported in A.2d, 2003 WL 1787971 (Conn.Super.)

**(Cite as: 2003 WL 1787971 (Conn.Super.))**

"Normally, an employee who resigns is not regarded as having been discharged, and thus would have no right of action for abusive discharge ... Through the use of constructive discharge, the law recognizes that an employee's voluntary resignation may be, in reality, a dismissal by an employer ... Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, *intentionally* creates an intolerable work atmosphere that forces an employee to quit involuntarily ... Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign ... Accordingly, [a] claim of constructive discharge must be supported by more than the employee's subjective opinion that the job conditions have become so intolerable that he or she was forced to resign." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Brittell v. Dept. of Correction,* 247 Conn. 148, 178, 717 A.2d 1254 (1998).

**\*3** "Such a constructive discharge, it would certainly seem, is actionable only where an express discharge would be actionable in the same circumstances." *Drolette v. Harborside Healthcare Corp.,* Superior Court, judicial district of Hartford, Docket No. 266417 (August 9, 1999, Beach, J.). Our Supreme Court has "recognized a common-law cause of action in tort for the discharge of an at will employee if the former employee can prove a demonstrably *improper* reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." (Emphasis in original; internal quotation marks omitted.) *Burnham v. Karl & Gelb, P.C.,* 252 Conn. 153, 159, 745 A.2d 178 (2000); see generally *Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980). "In interpreting this exception, [the Supreme Court] note [s][its] adherence to the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one ... This narrow public policy exception allowing a common-law wrongful discharge action by an employee who can prove a demonstrably improper reason for dismissal is an attempt to balance the competing interests of employer and employee. The employer is allowed, in ordinary circumstances, to make personnel decisions without fear of incurring civil liability. Employee job security, however, is protected against employer actions that contravene public policy ... Accordingly, the employee has the burden of proving a violation of *important* public policy." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Cimochowski v. Hartford Public Schools,* 261 Conn. 287, 306, 802 A.2d 800 (2002).

"In evaluating claims, [the court] look[s] to see whether the plaintiff has ... alleged that his discharge violated any explicit statutory or constitutional provision ... or whether, he alleged that his dismissal contravened any judicially conceived notion of public policy." (Internal quotation marks omitted.) *Thibodeau v. Design Group One Architects, LLC,* 260 Conn. 691, 699, 802 A.2d 731 (2002). Moreover, "[a] finding that certain conduct contravenes public policy is not enough by itself to warrant the creation of a contract remedy for wrongful dismissal by an employer. The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was *otherwise without remedy* and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." (Emphasis in original; internal quotation marks omitted.) *Burnham v. Karl & Gelb, P.C., supra,* 252 Conn. at 159-60.

In count one, Kelly alleges, *inter alia,* that Sergeant Holmes' refusal to assist him in apprehending a suspect and subsequent refusal to allow him to remove his blood-soaked uniform was a violation of important public policy, namely, workplace safety, and resulted in Kelly's constructive discharge. (Count one, ¶¶ 18-19.) Similarly in count two, Stranahan alleges, *inter alia,* that by knowingly providing him with a malfunctioning portable radio or, in other instances, requiring him to work without a radio, was a violation of important public policy, namely, workplace safety, and resulted in his constructive discharge. (Count two, ¶¶ 12-14.) In both counts, the complaint references General

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:02-cv-01350-CFD     Document 104-15     Filed 03/17/2006     Page 4 of 8

Not Reported in A.2d                                                      Page 4
Not Reported in A.2d, 2003 WL 1787971 (Conn.Super.)
**(Cite as: 2003 WL 1787971 (Conn.Super.))**

Statutes § 31-49, [FN2] requiring an employer to maintain a reasonably safe workplace to its employees. (Count one ¶ 20; Count two, ¶ 15.)

> FN2. General Statutes § 31-49 states in relevant part: "It shall be the duty of the master to exercise reasonable care to provide for his servant a reasonably safe place in which to work, reasonably safe appliances and instrumentalities for his work and fit and competent persons as his colaborers and to exercise reasonable care in the appointment or designation of a vice-principal and to appoint as such vice-principal a fit and competent person."

**\*4** The defendants, in their supporting memorandum to the motion to strike, argue that pursuant to *Parsons v. United Technologies Corp .,* 243 Conn. 66, 86, 700 A.2d 655 (1997), the plaintiffs, in order to prove that discharge resulted from a violation of the safe workplace public policy, have the burden to establish that the condition or situation in which the employee was directed to work posed an objectively substantial risk of death, disease or serious physical harm. (Defendants' Memorandum, p. 10.) With respect to Kelly's blood-soaked uniform, the defendants argue that exposure to blood was part of Kelly's regular employment duties and, therefore, did not rise to the level of threat posed in *Parsons.* (Defendants' Memorandum, p. 10.) With respect to Stranahan's allegation that he was forced to work without a functioning radio, the defendants argue that this court should be "loath to permit such an action ... based on a few instances where an employee's equipment does not work properly" and that this is a "common day [occurrence] which implicate[s] no substantial public policy." (Defendants' Memorandum, p. 12.)

"The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically." (Internal quotation marks omitted.) *Travelers Insurance Co. v. Namerow,* 261 Conn. 784, 795, 807 A.2d 467 (2002). "Although essential allegations may not be supplied by conjecture or remote implication ... the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Citation omitted; internal quotation marks omitted.) *Parsons v. United Technologies Corp., supra,* 243 Conn. at 83.

Despite the defendants' attempt to cast Kelly and Stranahan's allegations of workplace safety violations as a trivial mundanity, the court, in construing the allegations broadly and realistically, finds that both counts one and two sufficiently allege situations which pose an objectively substantial risk of death, disease or serious physical harm to the defendants. See *Parsons v. United Technologies Corp., supra,* 243 Conn. at 86. While the court acknowledges that there are inherent risks involved in police work, refusing to assist an officer in peril and requiring that officer to continue to work in a uniform that is soaked in a suspect's blood is a violation of public policy. Likewise, to knowingly, and on multiple occasions, require an officer to work in the field without a functioning radio, which in many instances is a police officer's life-line, creates a circumstance that goes well beyond the day-to-day risks which an officer must face and such a circumstance presents an objectively substantial risk of death, disease or serious physical harm to the defendants. See *id.,* at 80 n. 17. Accordingly, counts one and two properly allege a violation of an important public policy, namely, the public policy of workplace safety enunciated in *Parsons.*

**\*5** The defendants, in their memorandum, argue that even if the plaintiffs have sufficiently alleged a public policy violation, the plaintiffs are precluded from bringing their cause of action because they failed to exhaust the administrative remedies afforded to them under 29 U.S.C. § 657. [FN3] (Defendants' Memorandum, p. 12.) While the court agrees that an adequate statutory remedy would preclude the plaintiffs' cause of action despite sufficiently alleging a public policy violation, the court finds that the defendants have failed to demonstrate how 29 U.S.C. § 657, as applied to the complaint, would provide the defendants with such

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:02-cv-01350-CFD     Document 104-15     Filed 03/17/2006     Page 5 of 8

Not Reported in A.2d                                                        Page 5
Not Reported in A.2d, 2003 WL 1787971 (Conn.Super.)
**(Cite as: 2003 WL 1787971 (Conn.Super.))**

a remedy, which the defendants failed to exhaust.

> FN3. 29 U.S.C. § 657(f)(1) states in relevant part: "Any employees ... who believe that a violation of a safety or health standard exists that threatens physical harm, or that an imminent danger exists, may request an inspection by giving notice to the Secretary or his authorized representative of such violation or danger ... If upon receipt of such notification the Secretary determines there are reasonable grounds to believe that such violation or danger exists, he shall make a special inspection in accordance with the provisions of this section as soon as practicable, to determine if such violation or danger exists. If the Secretary determines there are no reasonable grounds to believe that a violation or danger exists he shall notify the employees or representative of the employees in writing of such determination."

"When a plaintiff has available to him administrative remedies that could have afforded him meaningful relief ... [h]is failure to [properly pursue those remedies] forecloses his access to judicial relief, because it deprive[s] the trial court of jurisdiction to hear his complaint." (Internal quotation marks omitted.) *Burnham v. Karl & Gelb, P.C., supra,* 252 Conn. at 168-69. In *Burnham v. Karl & Gelb, P.C., supra,* 252 Conn. at 167, the Supreme Court found that a plaintiff was precluded, as a matter of law, from bringing a common-law cause of action for retaliatory discharge based on a violation of public policy embodied in General Statutes § 31-51m because of the existence of a statutory remedy available to her under the Occupational Safety and Health Act (OSHA) pursuant to 29 U.S.C. § 660(c)(2). The court found in *Burnham* that the remedy provided to an employee, who was wrongfully discharged as a result of reporting health violations under OSHA, was a grant of jurisdiction to federal district court and authorization to "order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay." *Id.,* at 163.

The court is mindful that there is no requirement for the administrative remedy to be on par with a common law cause of action for constructive discharge. See *id.,* at 164-65. Unlike the adequate administrative remedy available to an employee under 29 U.S.C. § 660 for retaliatory discharge, however, the court cannot see how 29 U.S.C. § 557 provides an employee who files a grievance under OSHA for workplace safety violations with an adequate remedy for constructive discharge resulting from those safety violations. [FN4] Moreover, the complaint alleges that the plaintiffs filed grievances within the police department and with the town selectman and these grievances were never investigated. See *River Bend Associates, Inc. v. Simsbury Water Pollution Control Authority,* 262 Conn. 84, 103, 809 A.2d 492 (2002) ("We have recognized certain limited exceptions to the exhaustion requirement. Such exceptions include where the available relief is inadequate or futile ... or where local procedures cannot effectively, conveniently or directly determine whether the plaintiff is entitled to the relief claimed." (Internal quotation marks omitted)); see also *Mendillo v. Board of Education, supra,* 246 Conn. at 467.

> FN4. While the court notes that 29 U.S.C. § 557(f)(2) provides that the "Secretary shall, by regulation, establish procedures for informal review of any refusal by a representative of the Secretary to issue a citation with respect to any such alleged violation and shall furnish the employees or representative of employees requesting such review a written statement of the reasons for the Secretary's final disposition of the case," this does not constitute a remedy for constructive discharge. See, e.g., *Mendillo v. Board of Education,* 246 Conn. 456, 467, 717 A.2d 1177 (1998) (the futile or inadequate exception applies when "the issues in controversy between the plaintiff and the defendants are not the issues contemplated by [the statute]").

**\*6** The court finds, therefore, that counts one and two properly allege a cause of action for constructive discharge because Kelly and Stranahan

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:02-cv-01350-CFD    Document 104-15    Filed 03/17/2006    Page 6 of 8

Not Reported in A.2d                                                                Page 6
Not Reported in A.2d, 2003 WL 1787971 (Conn.Super.)
**(Cite as: 2003 WL 1787971 (Conn.Super.))**

have alleged violations of an important public policy and the defendants have not demonstrated that the plaintiffs have failed to exhaust an otherwise available remedy. As such, the counts are legally sufficient and the court need not address any other allegations within each count. See *P & G Construction v. Park Blue,* Superior Court, judicial district of Waterbury, Docket No. CV 01 0165316 (January 23, 2002, West, J.) ("A motion to strike is not the proper vehicle for elimination of irrelevant, immaterial or otherwise improper allegations. The proper vehicle would be a request to revise." (Internal quotation marks omitted.)). Accordingly, the defendants' motions to strike counts one and two are denied.

In count three, brought by Wells, the complaint essentially alleges that Wells was constructively discharged as a result of harassment. Unlike counts one and two, however, count three fails to allege that Wells' discharge violated any explicit statutory or constitutional provision or that his dismissal contravened any judicially conceived notion of public policy. See *Thibodeau v. Design Group One Architects, LLC, supra,* 260 Conn. at 699. Accordingly, the defendants' motion to strike count three is granted.

B
*INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

"In order for the plaintiff to prevail in a case for liability under ... [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe ..." Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society ... Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! ... Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citations omitted; internal quotation marks omitted.) *Carrol v. Allstate Ins. Co.,* 262 Conn. 433, 442-43, 815 A.2d 119 (2003).

"Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine ... Only where reasonable minds disagree does it become an issue for the jury. (Citations omitted; internal quotation marks omitted.) *Bator v. Yale-New Haven Hospital,* 73 Conn.App. 576, 579, 808 A.2d 1149 (2002). "There is no bright line rule to determine what constitutes extreme and outrageous conduct sufficient to maintain an action. The court looks to specific facts and circumstances of each case in making its decision." *Benton v. Simpson,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 01 00385675 (September 18, 2002, Rush, J.).

**\*7** Count five incorporates the factual allegations in counts one through three and further alleges the essential elements of intentional infliction of emotional distress. [FN5] The defendants argue that a motion to strike this count is appropriate because the plaintiffs have failed to allege conduct on the part of the defendants that exceeds all bounds usually tolerated by decent society. (Defendants' Memorandum p. 13.) The defendants further argue that the town of Plainfield cannot be held liable under this count as it is immune from suit pursuant to General Statutes § 52-557n.

> FN5. The court notes that the amended complaint alleges that acts of the defendants were "extreme and dangerous" rather than "extreme and outrageous" as required for this cause of action. (Count five, ¶ 3.) Further, the amended complaint

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:02-cv-01350-CFD     Document 104-15     Filed 03/17/2006     Page 7 of 8

Not Reported in A.2d                                                                                      Page 7
Not Reported in A.2d, 2003 WL 1787971 (Conn.Super.)
**(Cite as: 2003 WL 1787971 (Conn.Super.))**

alleges that the plaintiffs suffered "emotional distress" rather than "severe emotional distress." (Count five, ¶ 4.) The defendants, however, have failed to object to these minor facial defects and the court, in construing the allegations broadly, finds that the factual allegations are sufficient to support each element.

The court finds that the facts alleged in counts one and two, with respect to the defendants' intentional workplace safety violations (see discussion under part A, *supra* ), are sufficient to constitute extreme and outrageous conduct on the part of the defendants and are properly incorporated into count five. See, e.g, *Berry v. Loiseau,* 223 Conn. 786, 807, 614 A.2d 414 (1992) (intentional infliction cause of action upheld where plaintiff was subjected to repeated physical abuse at work). Further, the defendants' argument with respect to the town of Plainfield is without merit for the purposes of this motion to strike. See *Webster v. Pequot Mystic Hotel,* Superior Court, judicial district of New London-Norwich at New London, Docket No. CV 02 00556799 (January 9, 2002, Hurley, J.T.R.) (31 Conn. L. Rptr. 217, 220) ("A motion to strike a count brought against multiple defendants may not be granted on the ground that the allegations are insufficient as they relate to a single defendant. When a single count of a complaint combines separate causes of action against multiple defendants, the proper way to cure any confusion in that regard is to file a [request] to revise, not a motion to strike the entire complaint." (Internal quotation marks omitted.)). Accordingly, the defendants' motion to strike count five is denied.

### C
### INDIVIDUAL CAPACITY CLAIMS

The defendants seek to strike the individual capacity claims in all counts. The proper way to deal with this issue would have been a request to revise and not a motion to strike. See, e.g., *Bazzano v. Arroyo,* Superior Court, judicial district of Litchfield, Docket No. CV 0063015 (November 2, 1993, Picket, J.) ("While it may be true that the plaintiff's action against the defendant in his official capacity is barred by the doctrine of sovereign immunity ... the complaint only sounds in a single count, a count in which this court has jurisdiction. The appropriate procedure would have been a request to revise the complaint into two counts, one against the defendant in his individual capacity and a count against the defendant in his official capacity." (Citation omitted.)). Accordingly, the motion to strike the individual capacity claims is denied.

### D
### INDEMNIFICATION PURSUANT TO GENERAL STATUTES § 7-465

In count seven, the plaintiffs seek indemnification from the town of Plainfield pursuant to General Statutes § 7-465. [FN6] The defendants seek to strike count seven on the ground that the plaintiffs have failed to plead negligence on the part of any individual defendants. The defendants point out that the plaintiffs, in their amended complaint, have alleged intentional torts rather than negligence.

> FN6. General Statutes § 7-465 provides in relevant part: "Any town ... shall pay on behalf of any employee of such municipality ... all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property ... if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and *if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty.*" (Emphasis added.)

**\*8** In counts one, two, three and five, the plaintiffs' causes of action are predicated upon intentional or willful conduct. These allegations are incorporated by reference into the allegations of count seven. "Although the plaintiffs make the conclusory allegation [in count seven] that the infringements of their rights were not the result of any wilful or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:02-cv-01350-CFD   Document 104-15   Filed 03/17/2006   Page 8 of 8

Not Reported in A.2d                                                                 Page 8
Not Reported in A.2d, 2003 WL 1787971 (Conn.Super.)

**(Cite as: 2003 WL 1787971 (Conn.Super.))**

wanton act of the defendants ... such a conclusory allegation, unsupported by any of the specific factual allegations made in the complaint, and in fact directly contradicted by these allegations, is insufficient on a motion to strike to support the cause of action ... Accordingly, the plaintiffs fail to state a cause of action under § 7-465 since the statute expressly excludes indemnification for wilful and wanton conduct." *Hankard v. Avon,* Superior Court, judicial district of Hartford, Docket No. CV 96 0565611 (June 22, 1999, Hale, J.); see also *Elliott v. Waterbury,* 245 Conn. 385, 415, 715 A.2d 27 (1998) (legal concepts of wanton, reckless, wilful, intentional and malicious conduct indistinguishable). Accordingly, the defendants' motion to strike count seven is granted.

*ORDER*

The defendants' motion to strike is denied as to counts one, two, five and the individual capacity claims. The defendants' motion to strike is granted as to counts three and seven.

Not Reported in A.2d, 2003 WL 1787971 (Conn.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.