UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KRISTEN EJCHORSZT | : | NO.: 302CV1350 (CFD) |
| | : | |
| v. | : | |
| | : | |
| JAMES F. DAIGLE, JR., ET AL | : | OCTOBER 4, 2006 |

**DEFENDANTS LOUIS J. FUSARO, MARK LOUNSBURY, POLICE DEPARTMENT OF THE CITY OF NORWICH AND CITY OF NORWICH'S REPLY TO PLAINTIFF'S OPPOSITION TO RENEWED MOTION FOR SUMMARY JUDGMENT**

The defendants, Louis J. Fusaro, Mark Lounsbury, Police Department of the City of Norwich[1] and the City of Norwich, respectfully submit this Reply to the plaintiff's Objection to Motion for Summary Judgment, which was filed on or about September 21, 2006. As more fully set forth below, the plaintiff has failed entirely to oppose certain arguments raised by the defendants; thus, the plaintiff's claims subject of these arguments should be deemed abandoned. Moreover, the plaintiff has failed to identify a triable issue with respect to her Section 1983 Monell claims and her State common law claims. As a result, the defendants are entitled to summary judgment, as to Counts Nine, Ten and Eleven.

**I.   LAW AND ARGUMENT**

    **A.   PLAINTIFF'S FAILURE TO BRIEF ISSUES RAISED IN THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT CONSTITUTES A WAIVER**

In her Opposition Memorandum, the plaintiff failed entirely to oppose arguments raised by Mark Lounsbury regarding claims made against him in the Complaint. (See Def.'s Mem. Summ. J. pp. 16-17). In addition, the plaintiff failed to oppose the entry of summary judgment on her claim of a violation of equal protection (See Def.'s Mem. Summ. J. pp. 17-18) and the City of Norwich and Chief Fusaro's claim of governmental

---

[1]   "Because a municipal police department is not an independent legal entity, it is not subject to suit under section 1983." (Citations omitted) Knight v. Hartford Police Dept., 2006 WL 1438649 (D. Conn. 2006) (attached hereto as **Exhibit A**).  Consequently, the Norwich Police Department will not be referenced further.

immunity.  (See Def.'s Mem. Summ. J. pp. 18-19).  As a result, these claims are deemed abandoned.  See Rose v. Panolam Industries International, Inc., 301 F.Supp.2d 239, 247 (D. Conn. 2004).

It is generally recognized that to avoid abandoning an issue by failure to brief it properly, a litigant must present "analysis rather than mere abstract assertion."  Dumas v. Strange, 2002 WL 1608280 *7 (D. Conn. 2002); citing Cummings v. Twin Tool Mfg. Co., 40 Conn. App. 36, 45 (1996); see also Norton v. Sam's Club, 145 F.3d 114, 117-18 (2d Cir. 1989) (issues not sufficiently argued in the briefs are considered waived; Farnham v. Windle, 918 F.2d 47, 51 (7th Cir. 1990) (plaintiff's failure to brief legal theories supporting his claim in response to motion to dismiss constituted waiver).

Plaintiff's failure to present legal arguments to support certain of her claims requires that the defendants be granted summary judgment on these issues.  In particular, the plaintiff failed to address defendants' argument for the dismissal of Counts Nine, Ten, and Eleven as to the defendant Mark Lounsbury.  The plaintiff also failed to address defendants' arguments concerning, (1) Police Chief Fusaro's governmental immunity to the Count Nine claim of negligent supervision, (2) Police Chief Fusaro and City of Norwich's governmental immunity to the Court Ten claim of negligence, and (3) the Count Eleven claim of equal protection violation.  For these claims, the defendants are entitled to the entry of summary judgment.

**B.   THE PLAINTIFF'S REMAINING FEDERAL AND STATE LAW CLAIMS DO NOT PRESENT A TRIABLE ISSUE FOR THE JURY**

The plaintiff argues that there exists a question of material fact concerning, (1) whether the City of Norwich delegated final policymaking authority to Daigle; (2) whether the City of Norwich policymakers were deliberately indifferent in Daigle's training and supervision; and (3) whether the City was aware of a policy or custom of exploiting young female volunteers.  The plaintiff further argues that the City is not entitled to qualified immunity for Daigle's conduct and that triable issues exist concerning municipal indemnification of Daigle's conduct.  As set forth below, the plaintiff's arguments are unsupported and contrary to legal precedent.

### 1. The plaintiff does not plead that Daigle was the final policymaker for the City, nor does evidence and legal precedent support this claim

The plaintiff attempts to save her Section 1983 claim from dismissal by arguing the City of Norwich delegated to Daigle final policymaking authority over alcohol compliance operations within the Department; thus, Daigle's conduct in sexually exploiting and/or sexually assaulting her under the pretext of police standard police procedure constituted accepted policy of the municipality. (See Pl.'s Opp. Summ. J. pp. 6-8). This theory of municipal liability is nowhere to be found in her Complaint, nor is this theory supported by evidence, legal precedent or commonsense.

Count Nine of the plaintiff's Complaint sounds in negligent supervision of Daigle against Police Chief Fusaro, only. (See Complaint, Count Nine ¶¶ 1-39). Count Nine is incorporated into Count Ten, which in turn, is incorporated in Count Eleven of the plaintiff's Complaint. (See Complaint, Count Ten, ¶ 1-39; Count Eleven, ¶ 1-45). Count Eleven purports to allege a cause of action for a violation of the Fourth and Fourteenth Amendment, through Section 1983, but does not mention municipal liability due to final policymaking by Daigle. Id. Indeed, the only notice of a potential municipal liability claim in Count Eleven is plaintiff's incorporation of her negligence supervision claim against the Police Chief. Pleadings must give fair notice of the claims alleged to afford the adverse party the opportunity to answer and prepare for trial. Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir.1995). It is entirely improper to permit the plaintiff's new legal theory by way of an opposition memorandum. Accordingly, plaintiff's argument regarding final policymaking by Daigle should be stricken.

Nevertheless, Daigle was not a final policymaker with respect to alcohol compliance operations within the Department, nor was he the final policymaker with respect to the more particular and relevant issue; the sexual exploitation and/or sexual assault of a young female operative under the pretext of standard police procedure.

There is no *respondeat superior* liability under § 1983. See Monell v. Dept. of Social Servs., 436 U.S. 658, 663, 98 S.Ct. 2018 (1978). Liability may attach to a municipality only where the municipality itself causes the constitutional violation through

"execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Id. at 694. Only those persons with final policymaking authority can create official policy, thus subject the municipality to liability. See City of St. Louis v. Praprotnik, 485 U.S. 112, 129-130, 108 S.Ct. 915 (1988).

"Whether a particular municipal employee is a final policymaker depends on the interpretation of the relevant state law." Looby v. City of Hartford 152 F.2d 181, 188 (D.Conn. 2001); citing McMillian v. Monroe City, 520 U.S. 781, 786, 117 S.Ct. 1734 (1997). "It is not sufficient for Plaintiff to show that the official had *discretion* in a certain area; '[o]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability.'" Knight v. Hartford Police Department, 2006 WL 1438649 (D. Conn. 2006); quoting Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000). An official is not a final policymaker when (1) he is constrained "by policies not of that official's own making," (2) the officials decisions are subject to review, and (3) the policy decision purportedly made by the official is outside the realm of his grant of authority. See Praprotnik, 485 U.S. at 127.

In support of her argument, the plaintiff incorrectly places emphasis on Daigle's limited discretion in the manner of conducting underage alcohol compliance investigations. (See Pl.'s Opp. Summ. J. pp. 6-9). The issue is not Daigle's general discretion in conducting an investigation, but instead, whether Daigle was delegated final policymaking authority for the entire department in enacting policy concerning the sexual exploitation and/or sexual assault of young female undercover operatives. To hold that Daigle was given final policymaking authority with respect to this issue lacks all commonsense, warranting a finding that any investigating officer engaging in illegal or inappropriate sexual prurient conduct could legally bind a municipality merely because his investigation involved use of judgment.

Alternatively, the undisputed facts establish that Chief of Police Fusaro was the final policymaker of the Department. (See Fusaro Aff., ¶ 10, Def.'s Mem. Summ. J. Exh D). Plaintiff's argument that Chief Fusaro did not have hands-on detailed knowledge of

4

the alcohol compliance protocol is simply a red herring. Specific to the instant case, the layers of supervision over Daigle and the alcohol compliance investigation was the Commander of the Detective Division, the Deputy Chief and then, the Chief. (See Fusaro Depo., p. 31, Pl.'s Opp. Summ. J. Exh K). Lieutenant Franklin Ward was the commander of the Detective Division and directly supervised the subordinate Daigle and the institution of the alcohol compliance operation. (See Fusaro Depo., pp. 16,19, 34, Pl.'s Opp. Summ. J. Exh K; Tr. Ward, pp. 18, 32, Pl.'s Opp. Summ. J. Exh J). Lieutenant Ward went over the operation's basics with Daigle the evening of the alleged incident. (See Tr. Ward, pp. 6-7, Pl.'s Opp. Summ. J. Exh J). At this time, Lieutenant Ward knew and understood that female operatives were to be wired by other female operatives, as a matter of commonsense and City policy. (See Tr. Ward, pp. 16-18, Pl.'s Opp. Summ. J. Exh J; see also Fusaro Depo., pp. 27-28, Pl.'s Opp. Summ. J. Exh K). Daigle's method and manner of investigation was clearly subject to supervisor review and the constraints of proper police procedure, departmental policy and ethical conduct.

      The plaintiff also cannot reasonably dispute that Daigle's conduct was prohibited by the City of Norwich' Sexual Harassment Policy. (See City of Norwich Sexual Harassment Policy, attached hereto as **Exhibit B**). In addition to the City's Sexual Harassment Policy, Daigle's conduct was further constrained by departmental policy, which ultimately was cited as the reasoning for his employment termination. Daigle's violation of departmental policy included the following: (1) conduct unbecoming an officer, (2) violation [by analogy from an individual arrested to a volunteer] of the Department's strip search policy, (3) failure to conform to the police code and canon of ethics, (4) inappropriate use of his official position, (5) failure to adhere to the Department's missions, goals and objectives [inclusive of fostering public confidence], (6) neglect of duty, (7) general incompetence and extraordinarily poor judgment. (See City of Norwich Police Department IA Report, dated May 22, 2002, pp. 111-112, attached hereto as **Exhibit C**). Lastly, Daigle's sexual exploitation and/or assault upon the plaintiff was clearly beyond any realm of authority he may have had in conducting

alcohol compliance operations.

The plaintiff's claim that Daigle was a final policymaker, thus his illegal conduct constituted accepted governmental policy, is nothing more than a transparent attempt to attach municipal liability on the basis of *respondeat superior*. The plaintiff offers no material issue of facts or legal argument to the contrary. The defendants are entitled to summary judgment on plaintiff's Section 1983 claims.

### B. THE CITY AND POLICE CHIEF WERE NOT DELIBERATELY INDIFFERENT IN THEIR TRAINING AND SUPERVISION OF DAIGLE.

The plaintiff next argues that the City of Norwich and its Police Chief failed to sufficiently train or supervise Daigle in the proper procedure for wiring female operatives, and that this failure to train or supervise resulted in Daigle's sexual exploitation and assault of her under the pretext of standard police procedure.

The recent District Court decision Jane Doe II v. City of Hartford, 2005 WL 2009051 (D. Conn. 2005) is on point with this issue and offers guidance. The Honorable Alan H. Nevas found:

> To constitute deliberate indifference in a municipal failure to train or supervise claim, a plaintiff must show that (1) a policymaker knew to a moral certainty that his or her employees will confront a given situation; (2) the situation would present employees with a difficult choice of the sort that training or supervision would make less difficult, or a history of mishandling the situation; and (3) the wrong choice by a city employee would frequently cause the deprivation of a citizen's constitutional rights. See Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir.1992). Where the proper response is obvious to all without training or supervision, then the failure to train or supervise is generally not "so likely" to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise. See id. at 299-300 (applying City of Canton, 489 U.S. at 390 n. 10).

Jane Doe II v. City of Hartford, 2005 WL 2009051 (D. Conn. 2005) (attached hereto as **Exhibit D**).

In Jane Doe II, the City of Hartford and the Police Chief were charged with the failure to train or supervise police officers, who allegedly sexually assaulted prostitutes while on-duty. Id. The plaintiff claimed that the City and the City's Police Chief were

6

liable because they did not require gender-sensitivity training or other training that would have prevented the constitutional violation.  Id.

Citing Walker, supra, Judge Nevas found that, "because it should be obvious to officers without training or supervision that it is inappropriate and, indeed, unlawful to sexually assault prostitutes, the plaintiff may only survive summary judgment by producing some evidence that policymakers were aware of that type of misconduct, but failed to institute appropriate training or supervision."  Jane Doe II, 2005 WL 2009051 *6 (D. Conn. 2005); citing, Walker, 974 F.2d at 300.  Because there was no evidence policymakers were aware of the specific conduct; namely, the assaults, the plaintiff's claim failed on summary judgment.  Id.

Akin to the Jane Doe II decision, because it should be obvious to officers without training or supervision that it is inappropriate and unlawful to sexual exploit and sexually assault a young female operative under the pretext of standard police procedure,[2] the plaintiff in this case may only survive summary judgment by producing evidence that the City or the Police Chief was aware of the type of misconduct by Daigle, but failed to institute appropriate training or supervision.  See Walker, 974  F.2d at 299-300.

The plaintiff contends that she raises a triable issue of fact by way of the City and Police Chief's prior knowledge of certain conduct by Daigle.  In particular, the plaintiff claims that the City and the Police Chief knew of Daigle's fascination with photographing women in various stages of undress; thus, they were deliberately indifferent in placing Daigle in charge of the alcohol compliance program, which involved the use of young impressionable female operatives. (See Pl.'s Opp. Summ. J. p. 11)

When averring to Daigle's alleged fascination with photographing women in various stages of undress, the plaintiff entirely ignores material context and what policymakers knew concerning these events.  The plaintiff refers to two past events involving nude/semi-nude photography by Daigle of City employees.  The first

---

[2]  The plaintiff entirely failed to address defendants' argument that it should have been obvious to Daigle not to sexually exploit or assault the plaintiff under the pretext of standard police procedure; thus, the defendants' assume this issue abandoned by the plaintiff.  See, Rose v. Panolam Industries International, Inc., 301 F.Supp.2d 239, 247 (D. Conn. 2004).

occurrence involved an employee, Karen Valcourt, who posed nude for Daigle in 1987 for one photograph (fourteen (14) years before the incident involving the plaintiff), while in a consensual relationship with Daigle. (See Tr. Daigle, 4/3/02, pp. 355-356, Pl.'s Opp. Summ. J. Exh. B). In 1990, Patrolman Thomas Peterson became upset after learning of the photograph's existence, but Daigle denied the existence of this photograph when confronted by Peterson. (See Tr. Daigle, 4/3/02, pp. 361-362, Pl.'s Opp. Summ. J. Exh. B). The plaintiff offers no evidence that the City or the Police Chief was aware of this photograph before the occurrence alleged in the plaintiff's Complaint.

The second occurrence involved an employee, Kristen Vanase, who voluntarily posed for Daigle in 1997 semi-clothed for a calendar advertising Daigle's cigar store business (See Tr. Daigle, 4/3/02, pp. 355-356, Pl.'s Opp. Summ. J. Exh. B). One photograph of Kristen Vanase was provided to Captain Burnes, who sought the photo to assist him in an investigation concerning a complaint made by Vanase against him. (See Tr. Daigle, 4/3/02, pp. 362-363, Pl.'s Opp. Summ. J. Exh. B). In furtherance of this investigation involving Burnes, Daigle conveyed to then Deputy Chief Fusaro the existence of the partially nude calendar photographs. Id. This is the extent of the City of Norwich or Police Chief Fusaro's knowledge of Daigle's past photography of nude/semi-nude women.

The plaintiff's reliance upon these two events as somehow placing the City and the Police Chief on notice of a high degree of risk that Daigle will sexually exploit and sexually assault young female operatives is completely absurd. A plaintiff must demonstrate that the prior misconduct known by policymakers was closely related to the deprivation of federal rights. See Bryan County Commissioners v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382 (1997). "[T]here must be an affirmative link between the [past misconduct] and the particular constitutional violation." Oklahoma City v. Tuttle, 471 U.S. 808, 823, 105 S.Ct. 2427 (1985). Police Chief Fusaro's knowledge of semi-nude photographs of Vanase taken by Daigle did not expose Daigle as a sexual deviant and a potential offender of young female operatives. The photographs taken of Vanase were consensual, taken while off-duty and for Daigle's legal business pursuits, being

entirely dissimilar to the depraved constitutional violation alleged by the plaintiff in this case. Summary judgment should enter dismissing the plaintiff's Section 1983 claims.

### C. THERE IS NO EVIDENCE THE CITY OR ITS POLICYMAKERS HAD A POLICY OR CUSTOM OF SEXUALLY EXPLOITING YOUNG FEMALE VOLUNTEERS

The plaintiff next argues that Daigle instituted a policy or custom of sexually exploiting young women he recruited as volunteers. As set forth above, municipal liability under § 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. Thus, municipal liability is limited to actions for which the municipality is actually responsible. See Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). As set forth previously in this memorandum, Daigle is not a policymaker, nor did he create an official policy or custom of the municipality to sexually exploit and assault young female operatives. Indeed, Daigle's alleged misconduct was undertaken in secrecy with the specific intent that his superiors would not learn of his scheme. (See P. Depo. p. 75, Pl.'s Opp. Summ. J. Exh. A). The defendants are entitled to summary judgment as to the plaintiff's Section 1983 claims.

### D. THE CITY DID NOT MOVE FOR SUMMARY JUDGMENT ON THE BASIS OF QUALIFIED IMMUNITY

The plaintiff argues at length that the City of Norwich is not entitled to qualified immunity. The defendant City did not move for summary judgment on the basis of qualified immunity, nor can a municipality avail themselves of this immunity. See Clarke v. Sweeney, 312 F.Supp.2d 277, 302 n. 26 (D.Conn.2004); citing Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Consequently, the defendants will not address the plaintiff's arguments.

### E. AS A MATTER OF LAW, C.G.S. § 7-465 IS INAPPLICABLE IN THIS CASE BECAUSE DAIGLE WAS NOT ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT AND HIS ACTIONS WERE INTENTIONAL

The plaintiff argues the existence of a triable issue of fact with respect to her C.G.S. § 7-465 indemnification claim based upon her conclusory statement that a jury is

required to determine whether Daigle was acting in the scope of his employment and/or whether his actions were willful or wanton.  (See Pl.'s Opp. Summ. J. pp. 17-18).

The Connecticut Superior Court in Skrobacz v. Sweeney, 49 Conn. Supp. 15, 88 A.2d 899 (2003) (White, J.) recently analyzed the meaning of the phrase "scope of employment" as applied within C.G.S. § 7-465.  The Honorable Gary J. White found:

> The traditional definition of "scope of employment" is: "A servant acts within the scope of employment while engaged in the service of the master, and it is not synonymous with the phrase during the period covered by his employment . . . . While a servant may be acting within the scope of his employment when his conduct is negligent, disobedient and unfaithful . . . that does not end the inquiry. Rather, the vital inquiry in this type of case is whether the servant on the occasion in question was engaged in a disobedient or unfaithful conducting of the master's business, or was engaged in an abandonment of the master's business . . . . Unless [the employee] was actuated at least in part by a purpose to serve a principal, the principal is not liable." (Citations omitted; internal quotation marks omitted.)  A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 209-10, 579 A.2d 69 (1990).

Skrobacz v. Sweeney, 49 Conn. Supp. at 23 (attached hereto as **Exhibit E**).

In the instant case, Daigle is alleged to have sexually exploited and sexually assaulted the plaintiff *under the pretext of his employment*.  The plaintiff does not allege, nor does she set forth evidence, that Daigle's alleged prurient misconduct was also somehow serving a purpose of the City or furthering its interest.  As a matter of law, there is no statutory liability for indemnification under C.G.S. § 7-465.

Moreover, the Court need only look at the conduct alleged in the plaintiff's Complaint, not plaintiffs' conclusory theories of liability, to determine, as a matter of law, whether the conduct alleged is either willful or wanton.  See Logan v. Adams, 2005 WL 2277114 (2005) (Devlin J.) (attached hereto as **Exhibit F**).  The plaintiff's Complaint provides that Daigle sexually exploited and sexually assaulted her under the pretext of standard police procedure, which is not only willful and wanton, but also, criminal. See id. at *2.  Daigle's alleged conduct is plainly outside of the indemnification mandate of § 7-465.

## II. **CONCLUSION**

  Based on the foregoing and the defendants' memorandum in support of summary judgment, dated January 13, 2006, summary judgment should enter in favor of the defendants on all claims against them; specifically, all claims under Counts Nine, Ten and Eleven.

            DEFENDANTS,
            CITY OF NORWICH, POLICE
            DEPARTMENT OF THE CITY OF
            NORWICH, LOUIS J. FUSARO and MARK
            LOUNSBURY


            By_____/s/ Beatrice S. Jordan_____
             Beatrice S. Jordan
             ct22001
             Howd & Ludorf, LLC
             65 Wethersfield Avenue
             Hartford, CT  06114
             (860) 249-1361
             (860) 249-7665 (Fax)
             E-Mail:  bjordan@hl-law.com

**CERTIFICATION**

      This is to certify that on October 4, 2006, a copy of the foregoing **Reply to Plaintiff's Opposition to Renewed Motion for Summary Judgment** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Barbara L. Cox, Esquire
Gallagher & Calistro
1377 Boulevard
P.O. Box 1925
New Haven, CT  06509-1925

Eric P. Daigle, Esquire
James M. Sconzo, Esquire
Halloran & Sage, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT  06103-4303

                                                                    /s/ Beatrice S. Jordan
                                                                  Beatrice S. Jordan