*UNITED STATES DISTRICT COURT*
*DISTRICT OF CONNECTICUT*

```
***************************************
KRISTEN EJCHORSZT                   *
                                    *
                                    *
VS.                                 *
                                    *
                                    *   CASE NUMBER:
                                    *   3: 02CV1350(CFD)
JAMES F. DAIGLE, JR.;               *
LOUIS J. FUSARO, Chief of Police    *
MARK LOUNSBURY; POLICE                      *
DEPARTMENT OF THE CITY OF       *
NORWICH, AND CITY OF NORWICH        *
                                    *   MARCH 16, 2007
***************************************
```

**PLAINTIFF'S SUR-REPLY MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.   Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment is directed to all moving defendants.**

The plaintiff's reference to "the City" is intended to encompass all of the City defendants who moved for summary judgment, including Chief Fusaro. References to "the City" was a shorthand method of referring to all moving defendants. Plaintiff apologizes for any confusion that her shorthand reference may have caused.

**II.   Summary judgment on plaintiff's equal protection claim should be denied.**

The plaintiff retracts any concession she may have made at oral argument on her equal protection claim, as she was unaware of the arguments in the defendants' reply

memorandum. The defense motion for summary judgment gave such a cursory treatment to the equal protection claim, that it cannot be considered to have adequately analyzed or briefed its entitlement to summary judgment on the plaintiff's equal protection claim. Defendants have presented no analysis of the facts underlying the plaintiffs' equal protection claim – the improper treatment by Daigle and the defendants' failure to prevent that abusive treatment have focused only on the post-complaint investigation of Daigle nowhere alleged in the complaint.

Defendants wholly ignore that the equal protection claim is based on Daigle's abuse of the plaintiff and the failure of the other defendants to protect the plaintiff from his actions, particularly the improper viewing and/or photography of her unclothed body. The defendant does not address those claims at all, but, rather, focuses only on the plaintiff's response to an improper question at a deposition seeking a legal conclusion.

There exists a question of material fact as to whether the plaintiff, a member of a protected class of women, was treated differently from other volunteer operatives, *including potential male operatives*. Moreover, the recruitment and treatment of the plaintiff was plainly based on the fact that she was a woman. Daigle's practice was to choose women so that he could intimidate them into removing their clothing for his voyeuristic pleasure. It is evident that he did not recruit male volunteers because he would not receive the same pleasure from viewing an unclothed male operative.

There is no evidence that any of Daigle's superiors questioned, restrained, or addressed in any way Daigle's recruitment of only women to act as undercover

operatives. The repeated choice of a female operative should have been a red flag to any of Daigle's so-called supervisors. Daigle's recruitment of only women to serve as volunteers in order to abuse them constitutes a violation of the plaintiff's right to equal protection of the laws, especially in light of the fact that police practice and Connecticut guidelines require that the operatives be equipped with listening devices. The defendants' blind eye to Daigle's recruitment practices support the inference that they delegated policy making authority with respect to underage alcohol sting operations to him, or that they were negligent in protecting a foreseeable class of victims – impressionable young women, eager to please police officers.

The defendants have not demonstrated that they are entitled to summary judgment, as a matter of law on the plaintiff's equal protection claim.

III. **The evidence raises a question of fact as to whether Daigle was the final policy maker with respect to the conduct of underage alcohol compliance investigations.**

The Court should reject the defendants' efforts to reformulate the issue of Daigle's policy making authority. The issue is whether Daigle was delegated final policy making authority with respect to the police participation in the alcohol compliance program. The evidence supports the inference that his superiors in the police department sent him for training to run that program and deferred to him because he had received the training to conduct the investigations. It is well established that whether a particular municipal employee has been delegated final policy making authority is a question of fact. See

<u>Plaintiff's Memorandum in Opposition to Motion for Summary Judgment</u> pp.  . There is no evidence in this case that Daigle's conduct of the investigation was "constrained by any policies not of his own making" or that his decisions were subject to review. In fact, the evidence is that Lieutenant Ward and Chief Fusaro deferred to Daige in the planning and conduct of the investigations.

      Defendants' formulation of the "issue" as "whether Daigle was delegated final policy making authority for the entire department in an acting policy concerning the sexual exploitation and/or sexual assault of young female undercover operatives" is absurd. The Court should reject the effort to frame the issue so as to reach an absurd result. The plaintiff does not claim that is was the city's policy to sexually molest young women. It does appear, however, that under Diagle's policy making authority, it became the practice or custom to trick young women into removing their clothing. Defendants' desperate effort to reframe the issue to reach an absurd result illustrates their desire to avoid the inferences that Diagle was delegated final policy making authority with respect to the conduct of the alcohol compliance program. These inferences, of course, must be construed in favor of the plaintiff in passing on a motion for summary judgment.

      Defendants underscore the existence of questions of material fact when they argue that Lieutenant Ward "knew and understood that female operatives were to be wired by other female operatives [sic] as a matter of commonsense and City policy." Reply br. at 5. Lieutenant Ward apparently knew that one female operative was to be used in the compliance check. The evidence demonstrates that he did not bother to

check to see if a female police officer was to install the wire on the plaintiff. At best, Lieutenant Ward merely served as a rubber stamp to decisions left entirely to Daigle. Daigle's conduct of the alcohol compliance program was not subject to any review until after the plaintiff made her complaint to the chief of police.

The city's sexual harassment policy applies, on its face, only to employers and employees of the city. There is no evidence that the city took any steps to train its police officers to avoid sexually harassing volunteer operatives working with the police department. Similarly, the prisoner strip search policy does not explicitly refer to undercover operatives. The city made no effort to train police officers in how to deal with young men and women of impressionable age as undercover operatives.

The defendants have failed to establish that there is no issue of material fact with respect to the policy maker directing the alcohol compliance program or that they are entitled to summary judgment as a matter of law.

**IV.     There exists an issue of material fact whether the city and the police chief were deliberately indifferent in their training and supervision of Daigle.**

The defendants' reliance on <u>Jane Doe II v. City of Hartford</u>, 205 WL2009051 (D.Conn 2005) is misguided. The sexual assaults of prostitutes by police offers at issue in <u>Jane Doe II</u> are vastly distinguishable from the facts of the instant case. It was clearly not obvious to Daigle or, apparently to the other officers on the alcohol compliance check that it was inappropriate or unlawful for male police officers to require a volunteer to undress in order to attach a body wire. None of the officers involved in the compliance check on the evening of November 30, 2001 demonstrated any concern about Daigle taking the plaintiff into a room alone to attach the body wire. No officer, including Daigle's purported supervisor, raised any question concerning who was to affix the wire on the plaintiff or how it was to be attached. The defendants have presented no evidence that Daigle was ever instructed or trained on the use of undercover operatives, particularly female, or in the use of listening devices in the alcohol compliance program. Rather, they left it entirely up to Daigle, unsupervised and unquestioned, how to affix listening devices on vulnerable young operatives. The city and the chief of police were, or should have been, aware that the alcohol compliance program required young operatives who had to wear listening devices attached to their bodies. They exhibited deliberate indifference to these vulnerable volunteers in their failure to train and supervise the officer who was in charge of conducting the compliance operations.

The defendants argue that "the plaintiff entirely ignores material context and what policy makers knew concerning [Daigle's fascination with photographing young women in various stages of undress]." By arguing the "context" of Daigle's previous photography escapades the defendants inappropriately ask the Court to draw inferences in their favor, in violation of summary judgment standards. Defendants concede that then Deputy Chief Fusaro was aware of Daigle's interest in photographing nude or partially nude women, one of whom was a coworker. See <u>Rely Brief at 8</u>. Chief Fusaro's knowledge of Daigle's past photography exploits creates an inference that Daigle might seize an opportunity to photograph or at least pretend to photograph the young female operatives that he recruited and directed without any supervision.

Contrary to defendants' contention, there is an affirmative link between Daigle's past photography exploits and his photography of the plaintiff and the other female operatives. in 1997 Daigle persuaded a police dispatcher Kristen Vanese, to pose partially unclothed for an ostensible calendar that never materialized. The photographing of partially clothed volunteer operatives under the guides of "standard operating procedure" is virtually the same conduct as fraudulently inducing a coworker to pose for a nonexistent calendar. The affirmative link between the two sets of incidents is manifest. The fraudulently induced photographs of a seminude coworker for which he never received any discipline or further training should have been a warning to Daigle's superiors that he should have specific training in working with young volunteer operatives.

**V.    Daigle's conduct in affixing the listening device to the plaintiff was furthering his employer's business in conducting the alcohol compliance investigation.**

Whether Daigle was acting within the scope of his employment, for purposes of Conn. Gen. Stat. §7-465 raises at least a question of fact, precluding summary judgment. The question is whether Daigle's conduct in affixing the wire listening device to the plaintiff was furthering the police investigation that was to take place that evening. According to protocol, volunteer operatives were supposed to wear listening devices for their safety and to facilitate the compliance check. The *manner* in which Daigle affixed the device was tortious and violated plaintiffs' rights. Fusaro was negligent in ensuring that Daigle was properly trained to conduct the compliance program and in failing to supervise Daigle

Defendants' construction of scope of employment is so narrow and self serving that there would never be statutory indemnification for any negligent or improper act of a municipal employee. Such a result is plainly contrary to the obvious purpose of §7-465.

Defendants have not demonstrated that there are no issues of material fact or that they are entitled to judgment as a matter of law on Counts 9, 10 and 11 of the complaint. Their motion for summary judgment should be denied.

8

RESPECTFULLY SUBMITTED,

THE PLAINTIFF,
KRISTEN EJCHORSZT



By: \_\_\_\_/s/_____
       Barbara L. Cox
       Fed. Bar No. Ct08523
       The Gallagher Law Firm
       1377 Boulevard, P.O. Box 1925
       New Haven, CT 06509-1925
       (203) 624-4165
       Fax:  203-865-5598
       Her Attorney

### CERTIFICATION OF SERVICE

I hereby certify that on March 19, 2007 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated in the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____/s/_____
Barbara L. Cox