UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KRISTEN EJCHORSZT, | : | |
|     Plaintiff | : | Civil Action No. 3: 02-CV-01350 (CFD) |
| | : | |
| v. | : | |
| | : | |
| JAMES F. DAIGLE, JR., | : | |
| CITY OF NORWICH | : | |
|     Defendants. | : | |

### RULING ON MOTIONS IN LIMINE

In anticipation of trial, the parties made several motions in limine. The Court now addresses these motions.

**1.  Defendant Daigle's Motion for Bifurcation of Trial Regarding the Amount of Punitive Damages [Dkt. # 168]**

The individual defendant, James Daigle ("Daigle"), moved to bifurcate the trial on the issue of the amount of punitive damages. The plaintiff, Kristen Ejchorszt ("Ejchorszt"), seeks punitive damages for both her state law claims[1] and her claim under 42 U.S.C. § 1983. "Although 42 U.S.C. § 1983 allows juries and courts to assess punitive damages . . . against the offending official based on his personal financial resources, under well established precedent in this Circuit, it is the defendant's burden to show that his financial circumstances warrant a limitation of the award. Provost v. City of Newburgh, 262 F.3d 146, 163 (2d Cir. 2001) (internal citations and alterations omitted).

Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid

---

[1] Punitive damages for Connecticut state law claims are generally in the form of attorney's fees, the amount of which is determined by the Court. See Bhatia v. Debek, 287 Conn. 397, 420 (2008).

prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). "The decision to bifurcate a trial into liability and damage phases rests within the discretion of the trial court." Evans v. State of Conn., 168 F.R.D. 118, 120 (D. Conn. 1996) (citing Getty Petroleum Corp. v. Island Transp. Corp., 862 F.2d 10, 15 (2d Cir.1988)).  The Second Circuit has explained the following regarding bifurcation on the issue of punitive damages:

> [I]t is the defendant's burden to show that his financial circumstances warrant a limitation of the [punitive damages] award.  Since it often would be prejudicial to a defendant to attempt to litigate its financial condition during the trial on the issues of liability and compensatory damages, the preferred method of accommodating the various interests is to delay trial as to the amount of an award of punitive damages until the usual issues of liability and compensatory damages have been tried, along with the matter of whether the defendant's conduct warrants any award of punitive damages at all.  If the jury finds in favor of the claimant on all of these issues, the parties should then be allowed to present evidence with respect to the amount of the punitive damage award.

Smith v. Lightning Bolt Prod., Inc., 861 F.2d 363, 373-74 (2d Cir. 1988) (internal citations omitted); see also Laurin v. Pokoik, No. 02 Civ.1938LMM, 2005 WL 2230457, at *4 (S.D.N.Y. September 13, 2005).  Here, for judicial economy and to avoid prejudice to Daigle by forcing him to litigate his financial condition during the trial, Daigle's motion to bifurcate is granted. The Court will allow the defendant to present evidence as to his financial condition if the jury first finds that punitive damages are appropriate for violation of the Section 1983 claim.

### 2.    Defendants' Motions in Limine to Exclude Evidence of Prior Acts [Dkts. # 169 & 175]

Defendant Daigle and defendant the City of Norwich ("Norwich") separately moved to exclude evidence and testimony regarding prior underage alcohol sting operations and any prior

acts by Daigle involving the taking of nude and/or partially nude photographs[2] on the grounds that it is irrelevant, constitutes improper character evidence, and because the probative value of such evidence is substantially outweighed by the danger of unfair prejudice.

The defendants seek to preclude (1) James Daigle and Mark Lounsbury from testifying about their involvement in the Norwich Police Department's ("NPD") underage alcohol compliance operations and (2) Melanie Wilson ("Wilson") and Theresa Earl ("Earl") from testifying about their experiences working with Daigle as undercover operatives.[3]

The Federal Rules of Evidence prohibit admission of "[e]vidence of other crimes, wrongs, or acts [] to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). The Rules, however, do permit such evidence for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. "Under the 'inclusionary' approach to the rule followed by this circuit, such evidence is admissible for any purpose other than to show a defendant's criminal propensity. However, under Fed.R.Evid. 403, such evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." United States v. Pitre, 960 F.2d 1112, 1118-19 (2d Cir. 1992) (internal quotations and citations

---

[2]Norwich also moved to exclude evidence or testimony regarding Daigle's prior acts in taking nude or partially nude photographs of Kristen Vanase and Karen Valcourt. Because the plaintiff has represented to the Court that she will not seek to introduce such evidence, the Court does not address that aspect of Norwich's motion in limine.

[3]The defendants also seek to preclude Norwich Chief of Police Louis Fusaro and Deputy Chief of Police Warren Mocek from testifying about the NPD's internal investigation of complaints by Wilson and Earl. The Court will rule on that issue when it rules on the defendants' motions in limine to preclude admission of the internal affairs investigation [Dkts. # 173 & 192].

omitted).

The plaintiff argues that evidence of prior underage alcohol sting operations, including those involving Wilson and Earl, is similar act evidence that can give rise to an inference of intent.  See United States v. Gordon, 987 F.2d 902, 908 (2d Cir. 1993) ("Under Fed.R.Evid. 404(b), evidence of 'other crimes, wrongs, or acts,' though inadmissible to prove character or criminal propensity, may be admitted at trial to show that a defendant who claims that his conduct had an innocent explanation had the knowledge or intent necessary to commit the charged offense.").  The defendants argue that prior act evidence should not be admitted to show intent because intent will not be at issue in trial; rather, the defendants argue, the issue that Daigle will actually dispute at trial is whether he took photographs of Ejchorszt at all.[4]

Daigle is charged in the complaint with several intentional torts for which the plaintiff bears the burden of proving Daigle's intent.  Whether or not Daigle actually took photographs of Ejchorszt, still at issue will be Daigle's intent in doing whatever acts the jury finds that he did, whether that was persuading Ejchorszt to disrobe, telling her it was a normal police procedure, pretending to take pictures, or actually taking pictures.  See United States v. Irving, 452 F.3d 110, 119 (2d Cir. 2006) (allowing prior act evidence to prove intent element of offense); see also Huddleston v. United States, 485 U.S. 681, 685-92 (1988) (holding that a court may admit Fed. R. Evid. 404(b) similar act evidence that is conditionally relevant under Fed. R. Evid.104(b) if the jury can reasonably conclude that the similar act occurred and that the defendant was the actor).  Therefore, Ejchorszt may offer prior act evidence of Daigle's photographing other

---

[4]Daigle denies that he removed Ejchorszt's clothing, touched her in any manner, made any misrepresentations to her, or took photographs of her while she was in a state of undress.

undercover operatives for the purpose of showing Daigle's intent under Fed. R. Evid. 404(b).

When a past act is offered to prove intent, the past act and currently alleged conduct must be similar. United States v. Araujo, 79 F.3d 7, 8 (2d Cir. 1996). "Similarity, being a matter of relevancy, is judged by the degree in which the prior act approaches near identity with the elements of the offense charged. There is no necessity for synonymity but there must be substantial relevancy." United States v. Aminy, 15 F.3d 258, 260 (2d Cir. 1994) (internal quotations and alterations omitted). Here, Daigle's past acts in photographing Wilson and Earl prior to the underage alcohol operations are very similar to his alleged conduct in photographing Ejchorszt. At the time of the incidents, all three women were 19 or 20 years old. The incidents all took place over a relatively short period of fifteen months. All of the incidents were allegedly initiated when Daigle asked each of the women to participate in an underage alcohol "sting" operation. Once he had persuaded each of the women to participate, Daigle allegedly provided similar explanations as to why he was required to take their photographs while partially-nude, as follows: Ejchorszt claims that Daigle told her that he had to photograph her partially-nude to show that she was not concealing an identification card; Earl claims that Daigle told her that he had to photograph her nude to show that she was not concealing anything; and Wilson claims that Daigle told her that he had to photograph her nude to prove that she was not wearing a body microphone. Additionally, Daigle allegedly told each of the women that the photographing was part of the normal procedure, or part of the protocol, or normal procedure that was done to everyone. In all three cases, Daigle allegedly took the photographs while alone with each woman. Finally, Daigle allegedly told each woman not to tell anyone else that he had photographed them. The main difference between the Ejchorszt incident and the Wilson and

Earl incidents is that Daigle allegedly photographed Ejchorszt in the police station, while Wilson and Earl were not photographed on police property. Regardless of the difference in location, however, Daigle allegedly photographed all three of the women purportedly in preparation for their taking part in the underage alcohol sting operation. Moreover, although a slightly closer question, Daigle's prior acts in photographing Wilson and Earl to purportedly assist in an undercover child pornography investigation are also relevant to Daigle's intent and similar to the Ejchorszt underage alcohol sting operation. Taken as a whole, Earl and Wilson's experiences working as undercover operatives for Daigle are sufficiently similar to the alleged Ejchorszt incident to be relevant to the issue of Daigle's intent.

Further, under the Rule 403 balancing analysis, the relevance and probative value of this evidence is not substantially outweighed by any possible unfair prejudicial effect it might have. "Evidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980) (citing Advisory Committee Note to Rule 403). Specifically, the "prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." Id. Here, the evidence of the Earl and Wilson sting operations is not more disturbing than that of the Ejchorszt sting operation, and thus it will not unfairly excite emotions against the defendant. See United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir.1990). Norwich also argues that it will be unfairly prejudiced because the jury will infer from the prior act evidence a pattern of conduct by Daigle that should have been known by the city, or that was known and sanctioned by the city. The Court, however, can protect against this and other possible unfair prejudice by

carefully crafting a limiting instruction to ensure that the jury considers the prior act evidence only to determine Daigle's intent, and not to show that Daigle has a propensity to do the acts that Ejchorszt charges or that Norwich should indemnify Daigle because it should have known about and addressed Daigle's behavior.  Figueroa, 618 F.2d at 943 ("In assessing the risk of prejudice against the defendant, the trial court should carefully consider the likely effectiveness of a cautionary instruction that tries to limit the jury's consideration of the evidence to the purpose for which it is admissible.").  Therefore, the defendants' motions in limine to preclude prior act evidence are denied.

   **3.**  **Defendants Motions in Limine to Preclude Admission of the Internal Affairs Investigation [Dkts. # 173 & 192]**

Plaintiff seeks to introduce sections I, III, and V of the Internal Affairs Investigation report resulting from Ejchorszt's complaint, as well statements that Theresa Earl and Melanie Wilson gave to the NPD in the course of that investigation.  The defendants move to preclude admission of the report and the appended witness statements on the grounds that they are hearsay and that their probative value is substantially outweighed by their prejudicial effect and potential to confuse the issues, mislead the jury, and unduly delay the trial.  The Court will reserve judgment on these motions until trial.

   **4.**  <u>**Defendant Daigle's Objection to Admission of Medical Records without**</u>
      **Testimony [Dkt. # 190]**

Should the plaintiff demonstrate procedural compliance with Federal Rule of Evidence 902(11), Daigle's objection to the admission of medical records without testimony will be overruled, without prejudice to raising particular objections at trial.

   **5.**  **Defendant Norwich's Motion in Limine regarding Indemnification of**

**Plaintiff's Civil Rights Claim [Dkt. # 186]**

In Count Ten of her complaint, the plaintiff alleges indemnification pursuant to Conn. Gen. Stat. § 7-465 for the numerous state tort claims.  The plaintiff's complaint, however, does not assert her civil rights action for violation of her Fourteenth Amendment right to privacy until Count Eleven.  Defendant Norwich now argues that the plaintiff has never sought indemnification for her civil rights claim, and opposes plaintiff's motion to amend her complaint.

Rule 15 of the Federal Rules of Civil Procedure provides that a court may give leave to a party to amend its pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 125 (2d Cir. 2008).  Norwich should have been on notice from the commencement of this lawsuit that the plaintiff sought indemnification for her civil rights claim, and it has not established that it would be prejudiced by the plaintiff's amending her complaint to properly allege indemnification.  Therefore, Norwich's motion in limine regarding plaintiff's claim for indemnification on her Fourteenth Amendment invasion of privacy count is denied, and the plaintiff may amend her complaint.  The Court reserves judgment on the balance of Norwich's motion in limine.

**Conclusion**

Defendant Daigle's motion to bifurcate the trial on the issue of punitive damages [Dkt. # 168]  is GRANTED.  The defendants' motions in limine to preclude prior act evidence [Dkts. # 169 & 175] are DENIED.  The Court reserves judgment on defendants' motions in limine to

preclude admission of the internal affairs investigation and witness statements [Dkts. # 173 & 192].  Norwich's motion in limine regarding plaintiff's claim for indemnification on her Fourteenth Amendment invasion of privacy is DENIED; the Court reserves judgment on the balance of the motion.  The plaintiff may amend her complaint to plead a claim for indemnification on her Fourteenth Amendment invasion of privacy claim.

      SO ORDERED this   16th   day of June 2009, at Hartford, Connecticut.


       /s/Christopher F. Droney
      **CHRISTOPHER F. DRONEY**
      **UNITED STATES DISTRICT JUDGE**